In the Matter of the Judicial Settlement of the Estate of FRANK
MILLIETTE, Deceased.

Surrogate's Court, Clinton County, October 1, 1924.

**Wills — construction — residuary clause in favor of " heirs " mentioned in previous paragraphs — legatee who has received specific legacy competent, under Civil Practice Act, § 347, on releasing rights in residuum, to testify as to meaning of word " heirs "— word " event," as used in Civil Practice Act, § 347, defined — word " heirs " as used in residuary clause does not create ambiguity and parol evidence not admissible to explain meaning.**

In proceedings to construe the residuary clause in a will which provides for the division of the residue of the estate among the " heirs mentioned in previous paragraphs " a legatee who has received her specific legacy and who is not a legal heir is competent, under section 347 of the Civil Practice Act, to testify as to the intent of the testator when he used the word " heirs " where she has released any claim to any interest in the estate which she may have if the word " heirs " in the residuary clause is construed to include all of the persons mentioned in the previous paragraphs of the will whether or not they are legal heirs.

The " event," as that word is used in section 347 of the Civil Practice Act, in the present proceeding is the decision of the question as to the proper construction

Surrogate's Court, Clinton County, October, 1924.     [Vol. 123

of the residuary clause and, therefore, the release by the witness of any rights under that clause makes her a disinterested party although she had prior thereto received a specific legacy under a prior clause of the will.

The witness is not a person from, through or under whom an interested party derives title by assignment or otherwise simply because the result of her release may be to increase the share of the others interested in the will if the word " heirs " is construed to include all persons mentioned in the will prior to the residuary clause.

The word " heirs " as used in the residuary clause, which provides that the residue of the estate shall be divided among " the heirs mentioned in previous paragraphs," does not create an ambiguity and, therefore, parol evidence is not admissible to explain the intent of the testator in the use of the word.

Proceeding for the construction of a will upon the judicial settlement of the account of the executor.

*James B. Stearns*, for the executor John M. McNeil.

*Kenneth H. Holcombe*, for George William Milliette, Alphonse L. Milliette, Mary O. Milliette Surprise, Annie Milliette Lahue, children of Frank Milliette, deceased.

*Egbert C. Everest*, for George W. Milliette, Parmelia Milliette Falcon and Odile Milliette Trombly, brother and sisters respectively of Frank Milliette, deceased, Catherine V. Surprise, grandchild of deceased, and St. Patrick's Roman Catholic Church of Rouses Point, N. Y.

Harrington, S. The residuary clause of the will of the deceased is paragraph marked " fifteenth " and reads as follows: " After all my debts — funeral expenses and bequests are paid all other cash or securities or residue of estate I die possessed, I wish to be equally divided among the heirs mentioned in previous paragraphs."

In the previous fourteen paragraphs of the will of deceased, bequests were made to St. Patrick's Church of Rouses Point, N. Y., to the four children of the testator, to the granddaughter of the testator, to one brother and two sisters of the testator, to Louise C. McGettrick, a niece of the testator, and to John McNeil, the friend and executor of the testator. The estate consisted of both real and personal property and the executor was given authority to sell the real estate. Then follows paragraph " fifteenth " as above mentioned.

The question in this proceeding is the determination of the meaning of the word " heirs " as used in said paragraph marked " fifteenth." It is the contention of the four children of the testator that the word " heirs " refers to them only, while the other parties to the proceeding contend that the word " heirs " should be interpreted to mean " legatees " and thus apply to all of the legatees mentioned in the first fourteen paragraphs of the will.

Upon the hearing in the matter Louise C. McGettrick, the niece of the testator, and the scrivener of the will, was called as a witness on behalf of the legatees other than the children of the testator and questioned in regard to the conversation between her and the testator at the time she drew the will.   Mrs. McGettrick at that time had already received from the executor her specific legacy of $100.   Before proceeding to testify, she duly filed with the court a release under seal, to the executor of the estate, of all of her right, title and interest which she might have as a residuary legatee under the will, in case it should be held that the word "heirs" meant "legatees."   The witness then testified as to her conversation with the testator relative to the testator's intent as expressed to her, as to how his residuary estate should be disposed of, and that she used the word "heirs" to describe all of those mentioned in the previous paragraphs of the will, believing this to be the testator's intent.   This testimony was offered and taken subject to the objections of the attorney for the children of the testator, *first*, on the ground that the witness was incompetent to testify under section 347 of the Civil Practice Act, for the reason that she had already received a legacy under the will, and that the release filed for any interest which she might have as a result of this proceeding was not sufficient as it did not have the effect of releasing all of her interest under the will; and for the further reason that her release of any interest which she might have in the residuary estate would tend to swell the residuary estate, and the parties in behalf of whom she was testifying would thus receive through her act an increased share in the estate.   *Second*, that extrinsic evidence as to the testator's declarations made at the time of the preparation of the will, as to his understanding of the meaning of the word "heirs" was not competent unless the language of the will was ambiguous, and that no such ambiguity existed.   The court permitted such evidence to be taken subject to all objections to its final reception, for as there was no jury in the matter, no harm could be done by allowing it; if found by the court to be incompetent, it could be disregarded and would have no effect upon the court in its decision of the matter.   Illegal evidence, even if offered without objections or exceptions, cannot be considered by the surrogate in matters of construction.   *Matter of Fowles*, 95 Misc. Rep. 48, 49.

Section 347 of the Civil Practice Act reads in part as follows: "Upon the trial of an action or the hearing upon the merits of a special proceeding, a party or a person interested in the event, or a person from, through or under whom such a party or interested person derives his interest or title by assignment or otherwise,

shall not be examined as a witness in his own behalf or interest, or in behalf of the party succeeding to his title or interest against the executor, administrator, etc.   *   *   * ''

The matter before this court is in the nature of a special proceeding. The " event " as mentioned in the above-quoted section as applied to this proceeding is the decision of the question before this court, namely, the construction of the residuary clause of the will, for the purpose of determining who are the beneficiaries thereunder. As to this " event " the witness is no longer an interested party, as her release deprives her of any interest which she might have as a residuary legatee. If this were a probate proceeding, then it would be self evident that the witness would have to file a release of all her interest under the will before being allowed to testify, for in such case the " event " would be the probate of the will and all of her interest in the " event " would have to be released. Here, however, the " event " is not the probate of the will but the construction of a particular paragraph of the will, and as to this, the witness duly released to the executor of the estate any and all possible interest she might have therein. I believe this complies with the statute.

Nor is she a person from, through or under whom an interested party derives title by assignment or otherwise. The only reason given that she is such a person is the fact that by her release of any interest she might have in the residuary estate, she thereby increases the residuary estate and the share of each residuary legatee. It seems to be well settled that although the effect of such a release is to swell the residuum of the estate and increase the amount to be distributed under the will, yet the residuary legatees do not take anything thereby in the right of the releasing legatee and do not succeed to the sum derived from, through or under any right of such legatee. *Matter of Fitzgerald*, 33 Misc. Rep. 325, 327; *Matter of Wilson*, 103 N. Y. 374, 376; *Loder* v. *Whelpley*, 111 id. 239, 245; *Matter of Klein*, 118 Misc. Rep. 423, 425.

In *Bennett* v. *Bennett*, 50 App. Div. 127, 129, a son of the decedent was called to testify on behalf of his brother in an action to have the will declared invalid. It appears that the release was addressed to no one and was not shown to have been delivered to any one. The court held that it was ineffectual to release the interest of the witness and that he could not testify by reason of section 829 of the Code of Civil Procedure, now section 347 of the Civil Practice Act. The court further held that its execution, even if effectual to pass his interest, did not remove his disqualification as a witness under said section, stating: " If his interest in the estate was thereby released it enlarged the interest of each

[Misc. 745] Surrogate's Court, Clinton County, October, 1924.

of the other heirs therein." This case would appear to be in conflict with the above-mentioned cases. However, the distinction of this case and those above mentioned is clearly pointed out by the surrogate in *Matter of Klein, supra*, 423, 424, as follows:

" Two contentions are made: (a) That the witness was interested in the event; (b) that he was a person from, through or under whom an interested party derived his title by assignment or otherwise.

" The section does not bar the examination of a person interested in the event nor one from, through or under whom such an interested party derives his title; it provides that such a person shall not be examined as a witness ' *in his own behalf or interest, or in behalf of the party succeeding to his title or interest.*' \* \* \*

" In *Bennett* v. *Bennett*, 50 App. Div. 127, the witness testified against the will. By its provision, it appears that certain real estate was devised to him, but this had been deeded to him by the testatrix before her death. If it were denied probate he, as an heir, would by operation of law become seized with the other heirs of the real estate which the decedent owned at the time of her death. He attempted to release his interest in the estate and if this release had been effective its result would have been to deprive him, as heir, of his share of such real estate and vest the same in his brothers. It would have been as though he had deeded the same to them. Under such circumstances the court was undoubtedly correct in holding that the witness was disqualified to testify against the will because the persons in whose behalf he was called would then derive part of their title and interest from the witness by virtue of his release."

In *O'Brien* v. *Weiler*, 140 N. Y. 281, an action was brought by the executor and executrix of the will of Peter O'Brien, deceased, against a bank to recover a sum standing to the credit of their testator as guardian of his daughter. In order to have the executrix testify to conversations between the testator and his daughter which took place in her presence, she filed a release to the estate of all of her interest in the pending action. By the will of the testator his widow, the executrix, was given the life use of all of his estate and the remainder was given to his son, the executor. It was held that such a release did not qualify the executrix to testify on behalf of her coplaintiff, the court stating (at p. 285) as follows: " If it is claimed that the witness has divested himself of interest, it does not follow that he is thereby rendered competent. The test is to be sought in the legal effect of the instrument by means of which his interest was extinguished. It matters not by what name it is called; if it operates in law to vest in another

Surrogate's Court, Clinton County, October, 1924. [Vol. 123

party to the action, or in a person interested in its event, the title or interest which the witness formerly had, the prohibition remains if it is proposed to use the testimony of the witness in behalf of his successor in interest."

It might at first seem that the above case is in conflict with the cases above cited. However, in this case by the release of the interest of the executrix in the action, her coplaintiff, the executor and son of the testator, received the interest which she would have otherwise received, and it was apparently the view of the court that this was of no different effect than if she had actually assigned her interest in the action to her coplaintiff. But even though it may appear to be in point with the case in question, the Court of Appeals has distinctly stated in *Matter of Wilson* and *Loder* v. *Whelpley, supra,* that where the release by a legatee of his interest in the event tends to swell the residuum of the estate and increases the amount distributed under the will, the residuary legatees take nothing thereby in the right of the releasing legatee. In *Matter of Kindberg,* 207 N. Y. 220, 226, the court in speaking of the decisions of these two cases stated: " Whatever criticism may be made on the logic of those decisions, they have remained the unchallenged law too long to now disturb their authority." It would, therefore, seem clear that the witness was not a person interested in the event, nor one from, through or under whom an interested party derives his title; and even if she was such, she was not prohibited from testifying under the statute for the reason that the statute merely provides that such a person shall not be examined as a witness " in his own behalf or interest or in behalf of the party succeeding to his title or interest." By the filing of her release the witness had no further interest in the event; and as any increase of the residuum of the estate as a result of her release did not transfer to the residuary legatees anything from the releasing legatee, she was not, therefore, testifying in behalf of the parties succeeding to her title or interest. Hence, if this were the only objection to the testimony of the witness, I believe her testimony would be competent.

May parol evidence of the contemporaneous declarations of the testator at the time of making the will as to the persons whom he intended to designate by the word " heirs " be given on the theory that such word is ambiguous?

A case which is still cited by the higher courts as an authority on the question of when parol evidence may be offered in such a matter is that of *Mann* v. *Mann,* 1 Johns. Ch. 231. In this case the question arose as to the propriety of allowing parol evidence to show the intention of the testator as to the meaning of the word

" moneys " as used in his will.   At pages 234–236 of the opinion the court stated as follows:

" It is a well-settled rule, that seems not to stand in need of much proof or illustration, for it runs through all the books, from *Cheyney's Case* (5 Co. 68) down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, the words of a wil', nor to explain the intention of the testator, except in two specified cases; 1. Where there is a latent ambiguity, arising *dehors* the will, as to the person or subject meant to be described; and, 2. To rebut a resulting trust.   *   *   *   (Citing cases.)   *   *   *   If there be a mistake in the name of the legatee, or there be two legatees of the same name, or if the testator bequeath a particular chattel, and there be two or more of the same description, or if, from any other misdescription of the estate, or of the person, there arises a latent ambiguity, it may and must be explained by parol proof, or the will would fall to the ground for uncertainty. When a latent ambiguity is produced, according to the language of the courts, (Lord Thurlow, in 1 Ves. jun. 259, 260, 415, and Lord Kenyon, in 7 Term Rep. 148) in the only way in which it can be produced, viz., by parol proof, it must be dissolved in the same way; and there is no case for admitting parol evidence to show the intention upon a latent ambiguity on the face of the will. They are all cases of latent ambiguity; and the objection to supply the imperfection of a written will, by the testimony of witnesses, is founded on the soundest principles of law and policy.   ' It would be full of great inconvenience,' say the justices, in Cheyney's case, ' that none should know, by the written words of a will, what construction to make, or advice to give, but that it should be controlled by collateral averments out of the will.'   And if collateral averments be admitted, to use the words of Sir Matthew Hale, in *Fry and Wife* v. *Porter* (1 Mod. 310) ' how can there be any certainty? a will may be any thing, every thing, nothing.   The statute appointed the will to be in writing, to make a certainty; and shall we admit collateral averments and proofs, and make it utterly uncertain?'   In a still later case, (3 P. Wms. 354) Lord Talbot observed, that if we admit parol proof, ' then the witnesses, and not the testator, would make the will;' and he spoke with equal decision in the case of *Brown* v. *Selwin* (Cases temp. Talbot, 240) though the parol proof, in that case, would have left no doubt of the intention of the testator being contrary to the legal operation of the will.   *   *   *

" The only apology for parol proof, in any case, is the necessity of the thing, because the ambiguity is so complete as to elude all interpretation, and would destroy the devise altogether, unless

explained. But here is no such difficulty, and no such necessity for resorting to parol proof. The word *moneys* will apply, beyond all doubt, to the cash which the testator left at his death; and the bequest has, at all events, a certain and definite subject on which it can operate. * * *

" My conclusion is, that the parol proof cannot be received or permitted to enter into the consideration of the case; for it will readily be admitted, that to serve the particular purpose, or meet the supposed hardship, of an individual case, we ought not to break in upon the established principles of law. The observations of Lord Talbot, in one of the cases referred to, contains the true and wise doctrine on this subject, that *it is better to suffer a particular mischief than a general inconvenience.*"

The ruling in the above case has been cited with approval in *Brown* v. *Quintard*, 177 N. Y. 75, 83; *Reynolds* v. *Robinson*, 82 id. 103, 106.

The third exception to the rule excluding parol evidence in such cases would now seem to exist, namely, when there is a patent ambiguity which may be resolved by extrinsic evidence. *Matter of Fowles*, 95 Misc. Rep. 48, 51; *Matter of Douglas*, 97 id. 208, 210.

In order, therefore, to justify the reception of the parol evidence offered in this case as herein mentioned, it must appear that a latent or patent ambiguity arises from the language of the will, as in no event is any such evidence needed to prevent a resulting trust.

When is the language of a will ambiguous? In *Matter of Altman*, 115 Misc. Rep. 476, 478, the court said: " A will is ambiguous only when, after full consideration, it is determined judicially that no interpretation can be given to it. Beal, Rules of Interp. 580." See 1 Heaton Surr. (4th ed.) 369, to the same effect.

Black's Law Dictionary defines a latent ambiguity and a patent ambiguity, as follows:

" *Latent ambiguity* is where the language employed is clear and intelligible and suggests but a single meaning but some extrinsic fact or evidence *aliunde*, creates a necessity for interpretation or a choice among two or more possible meanings.

" *Patent ambiguity* is that which appears on the face of the instrument, and arises from the defective, obscure, or insensible language used.

" Ambiguity of language is to be distinguished from unintelligibility and inaccuracy, for words cannot be said to be ambiguous unless their signification seems doubtful and uncertain to persons of competent skill and knowledge to understand them. Story, Contr. (4th ed.) 70, § 679.

" The term ' ambiguity ' does not include mere *inaccuracy*, or

such uncertainty as arises from the use of peculiar words, or of common words in a peculiar sense.   Wigram Wills, 174."

It would seem clear that the word " heirs " as used by the testator is not ambiguous.   It refers to that class of persons mentioned in the Decedent Estate Law, who inherit real estate in case of intestacy.   Also, the term " next-of-kin " refers to that class of persons mentioned in the Decedent Estate Law who succeed to personal property in case of intestacy.   *Tillman* v. *Davis*, 95 N. Y. 17, 24, 25; *Burns* v. *Burns*, 190 id 211, 215; *New York Life Ins. & Trust Co.* v. *Winthrop*, 237 id. 93 108.   It has also been held that " heirs " or " next-of-kin " has the same meaning and effect as " legal heirs " or " legal next-of-kin," and that one as much as the other imports a reference to the Statutes of Descent and Distribution.   *New York Life Ins. & Trust Co.* v. *Winthrop*, *supra*   If the language of the will is not ambiguous, then the court is obliged to follow the ordinary import of the words employed regardless of any extrinsic evidence that may tend to contradict them.   *Bigelow* v. *Percival*, 162 App  Div. 831, 833; *Snyder* v. *Snyder*. 182 id. 65, 71; *Cammann* v. *Bailey*, 210 N. Y. 19, 30.

It, therefore, seems only proper to say that the testimony of the witness in regard to the contemporaneous declarations of the testator at the time of making his will as to his meaning of the word " heirs " should not be allowed, for the reason that the word itself is not ambiguous.   It refers to a class of persons who are definite and ascertainable without resort to any parol evidence. The prohibition of this testimony should be particularly apparent in this case for the reason that here the testator's " heirs " are identical with the testator's " children " and his " next-of-kin," as the grandchild mentioned in the will is the daughter of a living daughter of the testator.   In other words, if the testator had died intestate, his four children as mentioned in the will would have succeeded to al of his real and personal property as his sole " heirs " and " next-of-kin."   To extend the meaning of the word " heirs " in this case so that it would include " legatees " and thus include a church, a friend of the testator, his brother and sisters and a niece, would clearly be in violation of the rule that the court cannot enlarge or vary or make the will of the testator but can simply construe the one he has made in the light of the language used, when said language is not ambiguous.   Furthermore, to so extend the meaning of the word " heirs " would be to give it a meaning which, taking it as it naturally applies to existing facts and circumstances, it does not express.   To do so would contravene the fundamental requirement of the law that a will shall be in writing; that is, that it shall be a written expression of the testator's intention.

Surrogate's Court, Clinton County, October, 1924.    [Vol. 123

The case of *Matter of Lester*, 115 Iowa, 1, is directly in point. In the lower court parol evidence was offered for the purpose of showing the intention with which C. D. Lester used the words " heir-at-law " in his will. The court rejected this evidence. The appellant contended that the word " heir " was of uncertain meaning and could be explained by parol evidence of the contemporaneous declarations of the testator as to the persons whom he intended to designate. On this appeal the court affirmed the decision of the lower court and held as follows: " While it may be true that the word " heir " is subject to explanation or qualification, the explaining and qualifying language must be found in the instrument itself. The term ' heirs at law,' not explained or qualified by other language in the will, has a perfectly definite meaning, which cannot be changed by proof outside of the will itself. No authorities need be cited in support of a proposition which is so well established."

The only case of record apparently, in this state where it has been held that " heirs " may be construed to mean " legatees " is that of *Matter of Hull*, 30 Misc. Rep. 281. In this case the testator made a number of bequests to various relatives of his own and of his deceased wife's blood. He directed his residuary estate to be paid to " all heirs herein named " proportionately, and the question arose as to whether merely his own heirs should share in the residuary estate, or whether his wife's heirs should also participate therein. While the court held that all of the legatees named in the will should receive a proportionate share of the residuary estate, it is to be noted that there is nothing therein contained to indicate whether parol evidence was offered for the purpose of showing the intent of the testator in the matter. It would seem that the court reached its conclusion merely from a reading of the context of the will together with certain extrinsic facts properly before the court In other words, even this case is not an authority for the question at issue, namely, whether in such a case the contemporaneous declarations of the testator are competent for the purpose of showing the intent of the testator as to the meaning of the language used in his will.

In reaching the conclusion in this case that the intention of the testator in his use of the word " heirs " was to designate his four children named in the will as his residuary legatees it wou d seem that such a construction has in its favor " the ba ance of reasons and probabilities." In *Weeks* v. *Cornwell*, 104 N. Y. 325, 336, the court stated the following as a guide in the matter of determining the intent of the testator in proceedings for the construction of a will: " But, in the construction of wills as in the determination of questions of fact, and other questions of law, it is not to be expected

that absolute certainty can always be attained. Upon questions of fact it is sufficient that there is a balance of evidence or probabilities in favor of one side or the other of the dispute, and upon such balance courts wi'l rely in deciding the weightiest issues. So in the construction of written instruments, courts will scrutinize the language used, and however confused, uncertain and involved it may be, will give it that construction which has in its favor the balance of reasons and probabilities, and will act upon that. The intent of a testator may sometimes be missed, but such is the infirmity of language and human judgment that such a result is sometimes unavoidable."

In deciding that the intent of the testator herein is apparent from the language of the will, and that the court's construction of his intent should, therefore, be as herein mentioned, it would seem that the court's method in reaching this conclusion is in harmony with the established rules. On this matter the court, in *Robinson* v. *Martin*, 200 N. Y. 159, 164, stated as follows: " In the work of judicial construction, we cannot, of course, predicate certainty of our conclusions as to intent. At the most, we can, and we should, give that construction to a will, which has ' in its favor the balance of reasons and probabilities.' (*Weeks* v. *Cornwell*, 104 N. Y. 325, 336.) Precedents and rules, frequently, have but slight value in interpreting wills; for those instruments are rarely, and, in the nature of things, are not likely to be, simi ar in terms. When the testator's intention is obscure, resort to them may be helpful in ascertaining it. Where, upon inspection of the will and upon a consideration of relevant facts and circumstances, an intent is apparent, all rules to the contrary must yield; provided that intent does not offend against public policy, or some positive rule of law."

In *Salter* v. *Drowne*, 205 N. Y. 204, 212, the court said: " The intention of the testatrix so long as it is not contrary to some statute or to public policy, must govern. We must look for that intention in the will itself. Because wills differ in the forms in which testators express the'r intention it is difficult and almost impossible to base one decision unqualifiedly upon another. Rules for the construction of wills can only be applied when they will aid in such construction."

In *Matter of Douglas*, 97 Misc. Rep. 208, 209, the surrogate said: " In this work o' construction, the intention of the testator must be gathered from the words used. It must not be a matter of conjecture or speculation on the part of the court. *Matter of Miner*, 146 N. Y. 121, 131 "

Again in *Matter of Catlin*, 97 Misc. Rep. 223 228, the surro-

gate suggested the method which a court should follow in determining the intention of a testator, as follows:   The various parties in presenting their contentions seem to rely upon well-settled rules of construction.   But in approaching a question of the intention of testatrix's will it does not strike me as orderly to assert the various rules of construction and first to pick one which fits the aims of the clients.   Rules of construction are primarily and ultimately only aids for construing ascertained intentions. *Robinson* v. *Martin*, 200 N. Y. 159.  We must first ascertain the intention of the testatrix, irrespective of results, and then proceed to construction by the application of settled rules construing the effect of an ascertained intention.   Recourse to rules of construction ordinarily should be had only when there is some obscurity in the language and meaning of a will.   As I had occasion to hold construction begins when interpretation ends.   *Matter of Kathan's Will*, 141 N. Y. Supp. 705.   The converse method is illogical. Rules of construction bearing on estates should not be invoked in the first instance to ascertain intention."

And finally, in *Matter of Lummis*, 101 Misc. Rep. 258, the learned surrogate in a very able opinion on this subject said (at p. 263): " When we come to inquire, ' When is the intent of the testator not inferable wholly from his written will? ' we find it a most difficult resolution.   But it may be affirmed generally that it is whenever the written expression, with its purely verbal definitions of values, affixed to them by lexicographers or by custom, is not deemed by the court to be consistent with the real intent — then the door is opened, *sub modo*, to evidence beyond the writing.   The interpretation or construction, in other words, then invokes the judicial processes known as equitable.   Construction is nothing other than an attempt by the judge in equity to bring the text and the intent of a dubious writing into precise harmony with equity, with equitable probabilities  and with the higher principles of justice and reason.   But a resort to this extraordinary process cannot be invoked arbitrarily.   Otherwise the Statute of Wills would be practically nullified by the reception of evidence not in writing.   There must be a case shown for equitable interference. The written expression must be at least dubious.   If the will on its face is absolutely clear and not dubious in itself or with reference to any external circumstances, then no matter how inequitable the will may be  at common law the door is not to be opened for its amelioration beyond that possible from the written expression itself.   *   *   *

" The intention is but the court of construction's understanding of the effect of the language of the instrument as applied to the

circumstances given in evidence. The prohibition against constructing a will (*Herzog* v. *Title Guarantee & Trust Co.*, 177 N. Y. 86) is not then violated. The court need not then indulge in conjecture nor enter upon speculation nor offend an established rule of the courts by supplying language. *Dreyer* v. *Reisman*, 202 N. Y. 476. All that properly need be done is to apply equitably the inference raised from the express language as courts usually apply it." P. 274.

In the case in question it would seem clear that the intent of the testator is " inferable wholly from his written will," and that the " written expression, with its purely verbal definitions of values affixed to them by lexicographers or by custom " is consistent with the real intent of the testator — and, hence, the door is not open to evidence beyond the writing.

The executor herein will, therefore, upon the judicial settlement of his accounts distribute the residuary estate to the four children of the testator named in the will, equally, share and share alike.

Decreed accordingly.