In the Matter of the Estate of LEWIS TROMBLY, Deceased.

Surrogate's Court, Clinton County, October 28, 1930.

*Victor V. Boire*, for the petitioner, Dora Vassar.

*Robert C. Booth*, as special guardian for Louis, Floyd, Willard and Maynard Trombly, Harry and George Potry, infants.

HARRINGTON, S.  Lewis Trombly died a resident of the town of Altona on January 15, 1907.  His will was duly admitted to probate by this court on April 30, 1907.  Paragraph 2 of his will gave his wife, Mary Trombly, the life use of his real estate. Paragraph 4, after providing for several legacies, reads as follows: " After my beloved wife's death I hereby direct that the real estate be sold and the proceeds thereof be divided equally among my heirs then living."

Decedent's widow, Mary E. Trombly, was duly appointed executrix of her husband's estate.  She died testate on December 14, 1929, and appointed the petitioner in this proceeding as executrix of her will.

Lewis Trombly was survived by his widow and twelve children. Upon the decease of his wife, Mary E. Trombly, ten of these children were still living.  Two children predeceased their mother, one child, William Trombly, being survived by eight children and the other child, Josephine Potry, being survived by two children. Subsequent to Mr. Trombly's death, but during the lifetime of Mrs. Trombly, nine of their children conveyed their respective interests in the real estate in question to their mother.  The construction of decedent's will was joined in the application for the appointment of the petitioner as administratrix c. t. a.  The petitioner herein was on February 26, 1930, duly appointed as such administratrix and the construction of the will was reserved for future consideration and decree.  Several questions arise with respect to the construction of the above clause in decedent's will.

Has the administratrix c. t. a. power to convey decedent's real estate?  It would seem clear that she does have such power. (Surr. Ct. Act, § 225; *Hollenbach* v. *Born*, 238 N. Y. 34, 39.) Where, as in the case in question, the power of sale is imperative and not discretionary, such authority existed in an administratrix c. t. a. even prior to the statutory authority now given by section

225 of the Surrogate's Court Act. (*Mott* v. *Ackerman*, 92 N. Y. 539; *Williams* v. *Williams*, 152 App. Div. 323, 325.)

Did the deeds from nine of decedent's children to his widow convey to her any interest in the real estate? The direction for the sale of decedent's real estate is mandatory. The sale is postponed until after the death of decedent's widow. There is no direction for the division of the real estate. The command is for the division of the proceeds of the sale of the real estate. Under these circumstances, I believe that decedent's will created an equitable conversion of his real estate into personalty, and that his heirs did not acquire a vested interest in the real estate but only a right to an interest in the proceeds of the sale of the real estate, if and when sold upon the death of decedent's widow. (*Williams* v. *Williams*, *supra; Fraser* v. *Bowerman*, 104 Misc. 260, 265, and cases cited; *Matter of Bailey*, 124 id. 466, 468, 469, and cases cited.)

Who are decedent's " heirs," and in what manner shall they receive the proceeds of the sale of this real estate when sold, *per capita* or *per stirpes?* Evidence was offered on behalf of the petitioner by the scrivener of the will, a layman, and without objection by the special guardian, to the effect that the testator had in mind the equal distribution of his estate upon his widow's death to those who were equally close to him, namely, his twelve children; that the word " heirs " was the language of the scrivener. The apparent purpose of this testimony was to indicate that upon the death of decedent's widow the proceeds of the sale of his real estate should be divided among his children *per stirpes* and not *per capita.* Such evidence cannot, however, be considered by this court. In *Matter of Milliette* (123 Misc. 745, 750–753) I had occasion to pass upon this very question. I there held that the word " heirs " was not subject to explanation by declarations of the testator at the time of making the will for the reason that such word did not create either a latent or patent ambiguity. For the reasons mentioned in that case, I believe that it is improper in this case to consider any evidence relative to the meaning of the word " heirs," even though no objection was offered to such evidence. In *Dwight* v. *Fancher* (245 N. Y. 71, 74) the court refused to permit extrinsic evidence relative to the meaning of the word " children," stating as follows: " Parol evidence is not admissible to show that the testatrix did not mean what she has said in words, though these words may have been chosen by the attorney who drafted the will rather than by the testatrix. (*Reynolds* v. *Robinson*, 82 N. Y. 103.) " (See, also, *Matter of Evans*, 135 Misc. 656, 657, 658, and cases cited.)

Without any explanation the word " heirs " has a definite meaning. It refers to that class of persons mentioned in the Decedent Estate Law who inherit real estate in case of intestacy. Also, the term " next of kin " refers to that class of persons mentioned in the Decedent Estate Law who succeed to personal property in case of intestacy. (*Matter of Milliette, supra,* at p. 753, and cases cited.) When the word " heirs " is applied to the succession of personal estate, as in the present case, it means " next of kin." (*Tillman* v. *Davis,* 95 N. Y. 17, 25.) In the present case it happens that decedent's " heirs " and his " next of kin " are the same persons.

Shall decedent's " heirs " take the proceeds of the sale of his real estate *per capita* or *per stirpes?* Without the word " equally " appearing in the clause in question, then distribution would be made *per stirpes* and not *per capita,* for, as above mentioned, we would refer to the Statute of Distributions for the method of distribution. (*N. Y. Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93, 106–109.) On page 108 the court states as follows: " The rule thus emerges that in the absence of clear tokens of a contrary intention the statute is to be taken as the standard of division. (*Allen* v. *Boardman,* 193 Mass. 284.) The acceptance of this formula supplies a test of simple application. *A testator is still free, if he pleases to direct division upon other lines.*" In the instant case the testator did direct division upon other lines than those which would normally apply under the Statute of Distributions, by using the word " equally." This clearly indicates that the division must be *per capita.* (*Bisson* v. *West Shore R. R. Co.,* 143 N. Y. 125; *Petry* v. *Petry,* 186 App. Div. 738; affd., without op., 227 N. Y. 621; *Matter of Bailey, supra,* 466, 470; *Matter of Flint,* 118 Misc. 134.)

The administratrix c. t. a. should, therefore, sell decedent's real estate and distribute the net proceeds thereof *per capita* among the heirs of the testator as of the date of death of his widow, the life tenant. These heirs consist of the ten living children of decedent, the eight children of the deceased son, William Trombly, and the two children of the deceased daughter, Josephine Potry. Each one of these heirs of decedent will, therefore, be entitled to receive a one-twentieth part of the net proceeds of the sale of this real estate.

Submit proposed decree upon notice construing the will as herein mentioned.