In the Matter of the Accounting of HARRY WATON, as Executor of HENRY STORM, Deceased.

Surrogate's Court, Kings County, May 6, 1954.

*Milton B. Newman* for executor, petitioner.

*Alfred Jaffe* for Ida Tuchman and another.

*Louis A. Breier* for Anna Goldstein and another.

*Edward M. Benton* for Hebrew Sheltering & Immigrant Aid Society.

*Louis Jay* for Beryl R. Gersten and another.

*Joseph E. Keenan,* special guardian.

RUBENSTEIN, S. The accounting executor has requested the court to construe testator's will and determine the interests of the parties thereunder. The will is dated April 19, 1915. Testator died December 4, 1952. The instrument is so inartistically drawn as to require construction in its entirety. Paragraph "First" gives Ray Racow, testator's sister, "all my personal effects and personal property, excepting *ready cash,* for her own use for ever." (Italics supplied.) The meaning of such words as money, ready money, cash, ready cash, when used in a will, depends upon the context of the instrument and to some extent upon the nature of the property left by and the circumstances surrounding the testator at the time of execution of the will (*Smith* v. *Burch,* 92 N. Y. 228, 231).

The words, "cash money" have been held to include all personal estate, bank deposits and shares in a savings and loan association, excepting personal effects (*Matter of McKendrie,* 150 Misc. 665); "cash" and "money" may be considered synonymous, and the use of the word, "money" by a layman will include all cash in hand, cash in savings and other banks; "cash on hand" was held to be not only coins, bills or currency found on the person or in his home at death, but also bank deposits and specific quick assets (*Matter of Feist,* 170 Misc. 497); "money" may mean personal property generally (*Matter of Kimberly,* 126 Misc. 455; *Matter of Thayer,* 86 Misc. 191); contra, *Matter of Hinds* (270 App. Div. 408, affd. 296 N. Y. 648). See general discussion in *Matter of Hendrickson* (140 App. Div. 388), and *Smith* v. *Burch* (*supra*).

Schedule A of the executor's account lists testator's personal property as United States Bonds aggregating $7,580; cash found

in a savings bank safe-deposit box, $300; and savings bank accounts aggregating $50,170.34. Testator also died seized of a parcel of improved real property appraised at $50,000, the disposition of which will be discussed later.

The court, having considered the whole will and the parts thereof in relation to each other, has reached the conclusion that it was testator's intention to exclude from the bequest made to his sister, under paragraph "First", the United States Bonds, the cash in the safe-deposit box and the money deposited in the savings banks.

Paragraph "Second" directs the executors to manage and lease the real property specifically described and out of the "rental income" pay all the charges and the expenses of repairing and keeping the same in repair. Paragraph "Third" directs distribution of "such rental income" equally among designated legatees.

Paragraph "Fourth" provides that: "*After the expiration of five years* from the time that my said executors shall qualify, or *as soon thereafter* as they may deem best for the interests of my estate, my said executors * * * shall sell my said house * * * and the net proceeds of such sale my executors shall divide into five equal parts and distribute them as follows." (Italics supplied.)

The parties who would take under the will contend that paragraphs "Third" and "Fourth" constitute valid express trusts (Real Property Law, § 96), while those who would take in intestacy insist that the provisions create a power in trust (Real Property Law, § 99), which suspends the absolute power of alienation for more than two lives in being at its creation and therefore are invalid (Real Property Law, §§ 42, 60).

It is unimportant whether the provisions referred to constitute an express trust or a power in trust. The language quoted clearly directs not only the retention of the premises by the executors to collect the rents for the benefit of the named legatees for a period of at least five years, but that they shall not sell the premises and distribute the proceeds thereof sooner than five years from the day they qualify.

Section 60 of the Real Property Law provides: "A disposition of the rents and profits of real property to accrue and be received at any time subsequent to the execution of the instrument creating such disposition, shall be governed by the rules established in this article for future estates in real property."

Section 42 of the Real Property Law in part provides:

" Every future estate shall be void in its creation, which shall suspend the absolute power of alienation, by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate ".

A trust measured by years and not by any life or lives in being at the time of testator's death, as required by section 42 of the Real Property Law, is invalid (*Haynes* v. *Sherman,* 117 N. Y. 433, 437; *Matter of Manning,* 133 Misc. 695, 697; *Wiesenthal* v. *Young,* 280 App. Div. 590).

The cases cited by those who would sustain the trust are not in point. In *Chanler* v. *New York Elevated R. R. Co.* (34 App. Div. 305, 306), the power of sale was mandatory in character but discretionary as to time. The will provided: " but it is *my desire* that the real estate remain unsold until the expiration of five years after my decease unless in the opinion of my executor hereinafter named my estate will be benefited *by an earlier sale* ". (Italics supplied.) In *Buchanan* v. *Tebbetts* (69 Hun 81) the power to the executors was held valid although it authorized the sale of a parcel of land of the testator " after the lapse of one year, but not over two years from the date of my death ". That conclusion is supported by *Deegan* v. *Wade* (144 N. Y. 573, 576), where the court said: " It is obvious that the direction as to the time to sell was advisory, and, as the learned court below remarked, was intended to facilitate the sale and not to limit or restrain the power of absolute disposition. *The executor had the right to the ordinary period of administration* [then, one year], and this direction amounted to nothing more than a request that the sale be made at an earlier day." (Italics supplied.)

The court holds that the provision of paragraph " Third " of the will directing the executors to hold the realty for the benefit of the named legatees for a definite period of five years after they qualify is void.

The next question is: Who are interested in the real property and to what extent? Paragraph " Fourth " in part provides: " and the net proceeds of such sale my executors shall divide into five equal parts, and distribute them as follows, to wit: A. One-fifth thereof unto my said sister, for her own use for ever; B. One-fifth thereof unto the children of my said sister then living, share and share alike; with the proviso, however, that to the children that will then be over twenty-one years of age their share shall be paid then; but to those that shall be

under the age of twenty-one years their share be paid to them when they attain the age of twenty-one years; and in the meantime their share shall be invested or deposited in a safe and proper manner as my said executors may deem most proper. C. One-fifth thereof unto my said brother, for his own use for ever; D. One-fifth thereof to the children of my said brother then living, share and share alike; with the same proviso provided in the case of the children of my said sister, as aforesaid. E. The remaining one-fifth my executors are to distribute equally share and share alike unto the said Brownsville and East New York Hospital, The Socialist Party, Twenty-Third Assembly District, Brooklyn, and the said Jewish Immigration Aid Society.''

There are seven distributees of the testator; Anna Goldstein and Sarah Schimler, children of Nachami Ratner, a predeceased sister of testator, who are not mentioned in the will and can take only as distributees under section 83 of the Decedent Estate Law, the other five distributees may claim under the will as well as distributees.

The rules of construction applicable to testator's disposition of the real property are well established. The one-fifth share given under each of the sub-paragraphs '' A '' and '' C '', to the named sister and named brother of testator would have passed to them at testator's death, but since both predeceased him, their shares passed to their respective children or descendants who survived testator (Decedent Estate Law, § 29). The one-fifth share given '' unto the children of my said sister then living, share and share alike '' (sub-par. '' B ''), and the one-fifth share given '' unto the children of my said brother then living, share and share alike '' (sub-par. '' D ''), indicate futurity and were intended to pass to the class of beneficiaries so described living at the time of the distribution of the proceeds of the real property. Such provisions are clearly contingent, both as to time of division and as to persons among whom the shares are to be divided. They may not be accelerated and will pass as intestate property, unless otherwise validly disposed of (*Matter of Crane,* 164 N. Y. 71, 76; *Smith* v. *Edwards,* 88 N. Y. 92; *Delafield* v. *Shipman,* 103 N. Y. 463; *Wright* v. *Wright,* 225 N. Y. 329; *Matter of Bostwick,* 236 N. Y. 242; *New York Life Ins. & Trust Co.* v. *Winthrop,* 237 N. Y. 93; *Delaney* v. *McCormack,* 88 N. Y. 174; *Matter of Baer,* 147 N. Y. 348).

Under sub-paragraph '' E '' the Brownsville and East New York Hospital and the Jewish Immigration Aid Society, which

were corporations at testator's death, each take one-fifteenth share. The Socialist party, Twenty-Third Assembly District, Brooklyn, an unincorporated organization, is incapable of taking a devise or bequest under the laws of this State (*Ely* v. *Mogie*, 219 N. Y. 112; *Fralick* v. *Lyford*, 107 App. Div. 543, affd. 187 N. Y. 524; *Matter of Jones*, 90 N. Y. S. 2d 598; cf. *Matter of Idem*, 256 App. Div. 124, affd. 280 N. Y. 756), and, accordingly, one-fifteenth part passes as intestate property, unless otherwise validly disposed of.

What is the nature or character of the title to the real prop-. erty of the beneficiaries and distributees as determined by the foregoing construction? Testator does not directly or expressly dispose of the corpus of the real property. He directs that the executors "shall sell my house * * * and the net proceeds of such sale my executors shall divide into five equal parts and distribute them" (here follow the provisions for distribution already quoted from paragraph Fourth). The direction to sell being imperative operates as an equitable conversion of the real estate into money and evinces testator's intention that the beneficiaries (and the distributees) shall receive their respective shares in money, not land (*Morse* v. *Morse*, 85 N. Y. 53; *Williams* v. *Williams*, 152 App. Div. 323; *Matter of Trombly*, 138 Misc. 220, 222; *Matter of Cooley*, 166 Misc. 740; *Brooklyn Trust Co.* v. *Kernan*, 108 Misc. 452; *Moncrief* v. *Ross*, 50 N. Y. 431). Such a direction constitutes a power in trust (Real Property Law, § 97); and since the title to the realty did not vest in the executors and the exercise of such power is not in furtherance of or to carry out the terms of the trust, the power to sell and distribute is valid (*Hagemeyer* v. *Saulpaugh*, 97 App. Div. 535, 544; *Matter of Hitchcock*, 222 N. Y. 57, 73; *Matter of Berry*, 154 App. Div. 509; *Bailey* v. *Buffalo Loan, Trust & Safe Deposit Co.*, 213 N. Y. 525, 540).

Does such power extend to the shares which pass as intestate property? In *Bender* v. *Paulus* (197 N. Y. 369, 376), the Court of Appeals in a similar situation held that where real estate is devised to executors in trust to sell and distribute the proceeds among certain designated beneficiaries, and a share thereof passes to testator's heirs at law by reason of the invalidity of the devise of that share, the whole property is, nevertheless, subject to the exercise of the power of sale, if it is necessary to exercise that power in order to carry out to the best advantage the valid provisions of the will. The court said: "It is objected in behalf of the appellant that no such

necessity was found by the trial court to exist in the present case; but we think that this omission is supplied by the allegation in the complaint that the premises are so situated that a partition or division thereof could not be made without great prejudice to the ownership thereof, it being totally impracticable, and that a sale of the property is necessary.''

In the instant case the real estate consists of a house which obviously is not divisible. The beneficiaries and distributees are two charitable institutions and several individuals, some of whom may be behind the Iron Curtain. The sale becomes necessary and will be in conformity with the direction of the testator.

It follows that the executors will be required to sell the real property and distribute the proceeds. Since the rents of the real property were unlawfully disposed of by paragraph '' Third '' of the will, they are deemed to be a part of the converted fund and pass under a gift of the proceeds of the sale (*Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337, 355; *Lent* v. *Howard,* 89 N. Y. 169, 176) ; in the same proportion as the corpus (*Goebel* v. *Wolf,* 113 N. Y. 405, 415; *Matter of Marx,* 117 App. Div. 890, 893; *Brinckerhoff* v. *Farias,* 170 N. Y. 427, 430, motion for reargument denied 171 N. Y. 651; *Lovett* v. *Gillender,* 35 N. Y. 617, 620; see 2 Davids on New York Law of Wills, § 847).

It now becomes necessary to inquire whether the will contains a comprehensive residuary clause to embrace the shares which otherwise pass as intestate property and the bonds, cash and savings bank accounts which have been referred to. The pertinent part of paragraph '' Fifth '' which contains the only other testamentary disposition, reads as follows: '' Fifth: The moneys that may be due to me and collectible * * * after my death, shall be deposited to the credit of my estate and be part of the funds to be distributed after the sale of my said house, as aforesaid.''

The parties disagree as to the extent of the estate which passes under the quoted language. Obviously, it is not so comprehensive as to embrace shares of the proceeds of the realty passing in intestacy. The court has no doubt that it includes the United States Bonds, the cash found in the safe-deposit box and the savings bank accounts, which were excluded from the bequest made under paragraph '' First.'' While paragraph '' Fifth '' does not make a direct bequest of such assets, the direction that they shall become a part of the estate '' and be part of the funds to be distributed after the sale of my house,

as aforesaid,'' sufficiently indicates that they shall be distributed in the same proportion and to the same persons, institutions and distributees who are entitled to the proceeds, of the real estate under pargaraph '' Fourth '' (see *Matter of Setner,* 261 App. Div. 618, affd. 287 N. Y. 664; *Matter of Smith,* 263 App. Div. 588, and *Matter of Arents,* 179 Misc. 879, 881).

On the proof submitted and undisputed the court finds and determines that the premises described as '' No. 1581 Pitkin Avenue, Brooklyn, New York '' in paragraph '' Fourth '' of the will were intended by testator to be premises known as No. 1577 Pitkin Avenue, Brooklyn, New York, reacquired by him by deed recorded in Liber 4202, cp. 159, in the office of the Register of the County of Kings, New York. In designating '' Brownsville and East New York Hospital,'' as one of his beneficiaries under paragraph '' Fourth '', testator intended the corporation now known as Beth-El Hospital; and in designating the '' Jewish Immigrant Aid Society,'' he intended to designate the corporation now known as the Hebrew Sheltering and Immigrant Aid Society, commonly known as HIAS.

Proceed accordingly.