PARKER *v.* HILL.

Opinion delivered January 6, 1908.

1. WILLS—EFFECT OF HOLOGRAPHIC CODICIL.—Under Kirby's Digest, § 8012, a holographic will, not attested, will not be held to revoke any part of a prior will which was duly attested by subscribing witnesses, though the holographic will recites that it is to be a codicil to the prior will. (Page 368.)

2. SAME—EFFECT OF PROBATING WILL.—Under Kirby's Digest, § 8030, which provides that "no will shall be received in evidence until it has been allowed and admitted to record by a court of probate, and its probate before such court shall be conclusive until the same is superseded, reversed or amended," the probate of a holographic will will not be held to give it the effect of revoking a prior will which was duly attested. (Page 369.)

3. FRAUD—PROCUREMENT OF DEED FROM SISTER BY UNDUE INFLUENCE.— Where a brother procured a conveyance of land from his aged sister, at a time when she was much wrought up mentally and was broken down physically, by means of threats of harassing her remaining years with a lawsuit and without making full disclosure of her rights in regard thereto, such conveyance will be set aside in equity. (Page 369.)

Appeal from Woodruff Chancery Court; *Edward D. Robertson,* Chancellor; reversed.

*Campbell & Stevenson,* for appellant.

The deed to Hill should be cancelled for fraud, duress and undue influence; also for undue influence and abuse of confidence by one occupying a confidential relation.

1.   Mrs. Locke was induced to sign by *duress* as defined in the modern and latest authorities. 14 Cyc. 1123-4; 47 L. R. A. 417; 11 Ala. 456; 29 Ark. 150, 158; 26 N. Y. 12; 95 Wis. 257; 64 S. W. 329; 42 Neb. 23; 17 *Id.* 388; 49 Mich. 290; 19 S. W. 932; 73 N. Y. 498; 32 Mich. 146; 59 L. R. A. 296.

2.   The deed was procured by undue influence, fraud and intimidation by both Hill and Kennedy as agent. 2 Pom. Eq. Jur. § 951; also cases cited *supra* and under 1; 49 Ark. 367.

3.   Kennedy (the agent of Hill) occupied a confidential and advisory relation, and was bound to advise in the interest of good faith. 13 Cyc. 588-9; 38 Ark. 431.

4. It was not necessary for it to appear that Mrs Locke was of unsound or weak mind. 2 Pom. Eq. Jur. § 955.

5. Where a deed is procured by undue influence, it may be set aside, without regard to whether the influence was exercised by the grantee or a third person, where no valuable consideration is paid. 13 Cyc. 587; 14 Vesey, 273; 65 Mo. 378, 415; 72 *Id.* 669; 120 N. Y. 589; 44 Mich. 33; 64 S. W. 329; 3 Co. 537.

6. The inadequacy of price, in connection with the manner in which the deed was procured, sweeps away all equity defendant could claim. 6 Cyc. 286; 2 Pom. Eq. Jur. § 927-8; 8 Ark. 510.

7. The burden was on defendant to show good faith and absence of fraud and undue influence, especially so where there is gross inadequacy of price. 73 N. Y. 498, 502; 6 N. Y. 268; 15 Beav. 278; 16 N. Y. 285; L. R. 8 Eq. 558-567; 3 Vesey, 266; 15 Ark. 555; 75 Fed. 480.

8. That the codicil is holographic is no bar to the first will duly attested. Kirby's Digest, § 8012, subd. 1 to 4 and 5; *Id.* § 8014. There never was any ratification by plaintiff, as the same original fraud, duress and undue influence operated on the codicil. 6 Cyc. 304; 2 Pom. Eq. Jur. § § 964-5; 2 Story, Eq. Jur. § 694; 17 Ves. 20; 72 Mo. 323; 132 Ind. 288; 31 Ala. 292; 47 Ga. 25; 116 Mass. 227; 1 Gr. Ev. § 41-2; Lawson on Pres. Ev. 163 *et seq.*

*P. R. Andrews* and *J. F. Summers,* for appellee.

1. Plaintiff is in the attitude of a stranger in this case. The codicil has been duly probated, and the only remedy is by appeal. Kirby's Dig. § 8030. The will and codicil must be construed together.

2. No fraud, duress or abuse of confidence is shown on the part of defendant, and there can be no recovery.

3. Mrs. Locke secured an advantage by executing the deed to Hill, if she really desired to avoid litigation. She is barred by the statute after one year. Kirby's Dig. § 8029.

4. Mrs. Locke dealt at arms' length with Hill; there were no confidential relations between them, no abuse of confidence,

no misrepresentations inducing the contract, etc.  11 Ark. 58; 74 Ark. 71; 78 *Id.* 429.  The consideration was ample.

5.  Mrs. Locke ratified and confirmed the deed.  52 Ark. 467.

6.  No mere preponderance of the evidence is sufficient to impose a trust *ex maleficio* and change the beneficial title to real estate.  The fraud must be clearly proved.  71 Ark. 614; 73 *Id.* 310; 75 *Id.* 446.

HILL, C. J.  T. T. Locke died in October, 1902.  He left Mary E. Locke, his widow.  She was his second wife, and there were no children born of their marriage.  They had lived together for 26 years, and evidently were an affectionate couple. Mrs. Hill, wife of the appellee, was the daughter of Mr. Locke by his first marriage, and his only child.

Mr. Locke left a will leaving all of his property to his wife, and $10 to his daughter.  This will was made some three years before his death, and was duly attested; and after his death was duly probated, in November, 1902.

Mrs. Locke made a will in April, 1903, which was duly attested before subscribing witnesses.  This will gave various legacies and remembrances to her brothers and sisters, and nieces and nephews, and devised to her nephew, Lynn Parker, all of the real estate which she had received of her husband, T. T. Locke; and she devised to her nephews, Fred Parker and Lynn Parker, and her niece, Mary Will Parker, jointly, all of the real and personal property except these small legacies heretofore mentioned and except that left her by Mr. Locke, which, as stated, she devised to Lynn Parker, individually.  She seems to have had a considerable estate, aside from that derived from Mr. Locke.  Subsequent to the execution of this will by Mrs. Locke, and within a year of the probation of the will of Mr. Locke, Mr. Hill wrote Mrs. Locke a letter in regard to making a contest of the will of Mr. Locke.  Mr. Hill was a brother of Mrs. Locke, a man of affairs and considerable estate; and his wife, the daughter of Mr. Locke, was also possessed of considerable means.

Mrs. Locke was at this time about 64 years of age, and in feeble health, and went to Mountain View to visit a sister there in the hopes that the change would be beneficial to her health;

and it was while there she received this letter from Mr. Hill. The letter has been lost, and there is a conflict as to its contents, more as to the way in which it was stated than the substance of it. She wrote to a nephew's wife that Hill had said in that letter if she would renounce the will, saying it was a mistake, or sell the land at a nominal price to his wife, all would be well; but that if not his wife would exhaust every resource to set it aside. She also told her relatives that he said in that letter that she had better settle that case out of court; that she would not live to see the end of it, and it would only shorten her last days to fight the case in court, and that his wife had thousands of dollars to back the case; that he had consulted a lawyer, and had found that Mr. Locke's will could be broken; that when the will was made Mr. Locke had been prompted by unfair and adverse influences. Mr. Hill does not admit that the letter contained all of these things, but says that he wrote her that she was old, and would probably not live to see the end of the litigation, and appealed to her sense of justice and reason, and suggested several ways of settlement, and awaited her reply. She replied that she would never say that the will of her husband, leaving to her this tract of land in consideration of 26 years of faithful service as his wife, was a mistake, and that she would not make him out a liar by telling one herself. She added that Hill might not live to see the end of the litigation either.

Shortly after this she was visited by her nephew, Kennedy. Whether he came to see her as the hired emissary of Hill, or whether he was an officious intermeddler, his testimony and Hill's differ. Be the truth as it may, Hill accepted the fruits of his negotiation, and obtained from Mrs. Locke a deed to himself to the land that Locke had devised to her, and which she had in turn devised to Lynn Parker, which is the subject-matter of this suit.

Kennedy says that his aunt, when he found her at Mountain View, was very much wrought up mentally and pretty nearly broken down physically. He suggested to her that it might be better to settle the matter without a lawsuit; that the suit would give her a great deal of trouble in her old age, and there was a bare chance that she might lose it all in the end. He called her attention to the fact that Hill was able to spend as much as the

property was worth, and it would leave her in bad shape, and he thought any kind of a settlement was better than a lawsuit. She stated to him that she was getting four hundred dollars annual rent from the land, and he told her he would attempt to get that much for her annually during her life time if she would convey the property to Hill, and she finally agreed to do so. Kennedy went to Woodruff County, and reported to Hill what Mrs. Locke was willing to do, and he and Hill then fell out as to whether he was to have $500 for having induced her to consent to this arrangement; and Hill sent his son to Mrs. Locke to obtain the deed, and subsequently obtained a second deed to supply a defect in the first deed. By this deed Mrs. Locke conveyed to Hill all the land which she had derived through her husband's will for a consideration of $350, payable annually during her natural life, on the 20th of December each year. It seems that Kennedy objected to the deed being drawn for $350, annually instead of $400, and Hill then gave notes for $50 additional, so as to make the consideration $400 per year. This deed in final form was executed September 8, 1903.

Subsequent thereto, Mrs. Locke wrote a holographic will, which she considered a codicil, and which has been treated as a codicil to her attested will. This holographic will began as follows: "Knowing the uncertainty of life and the certainty of death, and being of sound mind, I write this my last will and testament, which I want my executor, Will T. Trice, to use in conjunction with a former will written by him, and which he now holds, and I want him to retain until my life is extinct, not allowing any one to handle or read it without a written permit from me to him during life. There is so little honor, so much fraud, duplicity, you hardly know who to trust." Then she gives many bequests, legacies and remembrances to relatives and friends, many of whom she speaks of in terms of great affection. The will shows a minute knowledge of all her affairs and property, and her affection for those whom she had remembered in her former will was evidently undiminished. After making various bequests of matters immaterial herein, the will then proceeds: "All of my real estate I bequeath to Fred Parker, Lynn Parker and Mary Will Parker Kyle, to be equally divided. The W. T. Hill place is mine. I have a deed and

mortgage, also note on same. Not one dollar of the principal has ever been paid. I have lived without it; others can do the same. I want him to live upon it without molestation until called away by a higher power, just as he has, by keeping up the place, and paying taxes and allowing no timber to be cut and wasted, only what is necessary for the good of the place. At his death it goes to Fred Parker, Lynn Parker and Mary Will Parker Kyle. Every foot of land I own. Not one foot came from the Locke estate, so there will be no one on the other side to put in a claim. I have settled all that, I hope, amicably and peacefully, and the 'hatchet is buried.' I owe no one anything but good will, and a heart full to overflowing to my precious Redeemer, who has piloted me safe thus far." Then follows another bequest to some faithful negroes. This will was dated the 26th of September, 1904. Mrs. Locke died in February, 1905. It is thus seen that she does not devise the Locke land to Lynn Parker or any one else, but recognizes that she had parted with it.

There is no question but that she retained full possession of her mental faculties during all the time herein referred to. She seemed to be a woman who affectionately regarded her relatives, and who lived a quiet, simple, Christian life, and was averse to strife and contention. She was not upon the same affectionate terms with her brother, Frank Hill, that she was with other members of her family, but always maintained friendly relations with him; but the warmth of affection which she exhibited for other near relatives seemed to be absent for him.

After her death the attested will was probated, and the holographic will was probated as a codicil thereto. This suit is brought by Lynn Parker to recover the land which her first will devised to him, ignoring the holographic will, towit, the land which Mr. Locke gave to her, and to set aside the conveyance which she made to the land to her brother, Mr. Hill. He lost in chancery court, and has appealed.

The will of Mrs. Locke under which Lynn Parker claims was executed in accordance with the first four paragraphs of section 8012, Kirby's Digest. The holographic will, which was treated as a codicil, was made pursuant to the fifth paragraph.

This paragraph provides that no such holographic will shall be pleaded in bar of a will subscribed and attested as in paragraphs one to four, and section 8014 provides against the revocation or alteration of an attested will except by one similarly attested save in cases not pertinent here. Therefore, the holographic will or codicil of Mrs. Locke did not revoke the attested will leaving to Lynn Parker the land derived from Mr. Locke.

Appellee argues that, the codicil having been duly probated, and the judgment of probate not having been appealed from, the same is in full force and not open to attack by Lynn Parker in this proceeding, and calls attention to section 8030, of Kirby's Digest, which provides that no will shall be received in evidence until it has been probated, and its probate shall be conclusive until superseded, reversed or amended. The statute gives a holographic will full scope and effect, except it shall not alter or revoke an attested will. The probation of the holographic will cannot give it effect beyond that given to it by statute; and the probation does not attempt to do so, but merely attempts to give it the full force and effect which the law gives it. Both of these instruments show upon their face exactly what they are; their probation shows how each was executed; the court has properly admitted each of them to probate; they stand together so far as the law permits them to stand together. The probation of the holographic will cannot make it override the statute, but merely makes it conclusive of what it is until it is superseded, reversed or amended by appeal or other judicial proceeding.

The case must be considered on its merits, for Parker is in an attitude to question the effect of the holographic will and Mrs. Locke's deed to Hill.

There was considerable evidence adduced as to the execution of the deed to Hill by Mrs. Locke and the reasons therefor, only a brief outline of which has heretofore been given; and it would serve no useful purpose to set it forth and review it in full. Her condition at the time she was induced to agree to this conveyance, as described by Kennedy, was that of one having absolute control of her affairs, but "torn up mentally and broken down physically." And yet, as emissary of his uncle, her brother, he threatened her with the dire effects of a lawsuit which would

destroy her peace of mind and likely shorten her life; and, working thus upon her fears, easily aroused in this condition, he persuaded her to agree to deed the land to Hill, although she had theretofore refused to do so. The nominal consideration for the deed was the payment to her for life of $400; but the land was bringing her that much or more each year, and hence there was practically no monied consideration for the conveyance. There is undisputed evidence that Mrs. Locke devised this land to Lynn Parker because Mr. Locke wanted him to have it. This was a natural explanation of why the land was devised to him, instead of jointly to her other nephew and niece. This plan was changed, not from changed affection or desire to carry it out, but solely to avoid the lawsuit with her brother's wife over it; and it is then conveyed to her brother, the only relation she has for whom she seemed to have no affection.

Can a deed made under these circumstances be sustained in a court of conscience, notwithstanding a will made a year later recognized it as existing?

Mr. Justice EAKIN, speaking for the court in *Million* v. *Taylor,* 38 Ark. 428, said: "It is true that all persons are bound by their contracts, intelligently made, however improvident they may be, if they deal at arms' length as strangers, under no obligations of protection or confidence. And it is generally true that the mere relation of brother and sister does not impose that confidence of itself. Ordinarily, about ordinary matters, if there be nothing in the circumstances showing dependence and trust on one hand and the assumed duty of protection and counsel on the other, equity will not compel a brother to treat a sister with more tenderness than other women. These things belong to the imperfect duties, which even equity cannot undertake to enforce. Yet, conceding that this relation differs, generally, in its confidential nature from that between parent and child, guardian and ward, attorney and client, principal and agent: it has been held to assume a confidential character, not only as to brother and sister, but between any near relatives, dealing with regard to inheritance, or distributive shares of estates, coming to them jointly. There are many authorities exacting under such circumstances *uberrima fides,* with the duty

of full disclosure of everything affecting value, and each other's interest in the subject-matter."

It is argued with some force that there was no confidential relation existing here between the brother and sister, as their feelings were not as cordial as those of a brother and sister should have been, and that confidence was not reposed in him. The utmost that these facts would do would be to lessen the scrutiny with which the courts would view a transaction between brother and sister who otherwise were standing in unequal positions, but would not change the principle involved. Certainly, it was incumbent upon this brother to make a full disclosure to his aged and feeble sister of the respective rights which she and his wife had to the property in controversy, before he could make this purchase. Instead of this, with veiled threats and insinuations he makes it plain that he is going to harass her remaining years with a lawsuit. The evidence is undisputed that Mr. Locke was, up to the time of his death, three years after he made the will, a man in the full possession of his mental forces, and to whose sanity no question has ever been raised. It is unreasonable to suppose that there could be any question of undue influence in a man devising to his wife, who, for more than a quarter of a century, had been his affectionate helpmate, what property he possessed, when his only child was in easy circumstances and married to a man of means. The will was in proper form, and there is absolutely no evidence in this record whatsoever of any ground of contest, and therefore the court must take it that this asserted claim of Mr. Hill's wife to the property her father devised to her step-mother was a groundless claim, asserted for the sole purpose of working upon her fears and causing her to surrender this property, rather than have her remaining years darkened with discord and worn with strife and her substance wasted in defending an unjust lawsuit.

Mr. Pomeroy says: "Where there is no coercion amounting to duress, but a transaction is the result of a moral, social or domestic force exerted upon a party, controlling the free action of his will and preventing any true consent, equity may relieve against the transaction, on the ground of undue influence, even though there may be no invalidity at law. * * * The doctrine of equity concerning undue influence is very broad, and

is based upon principles of the highest morality. It reaches every case, and grants relief 'where influence is acquired and abused, or where confidence is reposed and betrayed'. It is specially active and searching in dealing with gifts, but is applied, when necessary, to conveyances, contracts executory and executed, and wills." 2 Pomeroy· on Equity Jurisprudence, 3d Ed. § 951.

The court is of opinion that the deed of Mrs. Locke to Mr. Hill was not made of her own free will, but was the result of "a moral, social and domestic force" exerted against her in her enfeebled condition which controlled her free action and prevented her true consent.

It is insisted that, even if the holographic codicil cannot be sustained, yet it was a ratification of the deed. But the codicil itself and the evidence shows that it was not a voluntary ratification of it, but rather that Mrs. Locke acknowledged that she had been forced unjustly to buy peace; and such was evidently the fact. She did not ratify it, but recognized that she had surrendered; and the court is satisfied that it was not a voluntary but a coerced surrender.

Reversed and remanded, with directions to enter a decree in conformity herewith.