IN RE ESTATE OF MOLLIE OFFUTT, Deceased,
    Respondent, v. HARRY TROLL, Public Adminis-
    trator, Appellant.

St. Louis Court of Appeals.  Argued and Submitted April
    5, 1911.  Opinion Filed July 15, 1911.

1. WILLS: Construction: Intent of Testator.  Wills should be con-
strued so as to effectuate the intent of the testator.

2. ———: ———: ———: "Cash in Bank."  Testatrix, a widow
without children, by her will executed four days before her death,
bequeathed to her mother an insurance policy, to her sisters and
niece "all cash on hand and in bank"—these persons being her
only blood relatives—and to her adopted daughter, the residue
of her estate, real, personal and mixed.  For a long time prior to
her death, she had maintained a checking account with a trust
company, there being $485 to her credit at the time of her death.
Eight days before her death, she deposited the sum of $700 with
a bank with which she had had no previous dealings, taking a
certificate of deposit, payable to her order six months after date.
Held, that the time deposit must be held to be "cash in bank,"
within the intent of testatrix, since it is obvious she intended
making as nearly even a division as possible among those nearest
her in blood and affection, and to hold that the time deposit was
not "cash in bank" would make the share of the residuary legatee
largely preponderate over the others.

Appeal from St. Louis City Circuit Court.—Hon.
    Charles Claflin Allen, Judge.

AFFIRMED.

Edwin S. Puller for appellant.

(1) "Cash" means ready money, placed where
the owner can command it at any time.  It does not
include promises to pay in the future.  Long v. Strauss,
107 Ind. 94; Crocker v. Crane, 21 Wend. 211; Palliser
v. U. S., 136 U. S. 257; State v. Moore, 48 Neb. 870;
6 Cyc. 700.  (2)  A certificate of deposit is a mere

In re Estate of Offutt v. Troll.

promise to pay money. It is a promissory note and not "cash." Curran v. Witer, 68 Wis. 16; Dietrich v. Rothenberger, 75 S. W. 271; Mereness v. First National Bank, 112 Ia. 11; Brummigim v. Tallent, 39 Cal. 503; Leavitt v. Palmer, 3 Comst. (N. Y.) 19; Morse on Banks and Banking, (4 Ed.), sec. 298; 1 Bolles on Banking p. 455; Pierce v. Bryant, 87 Mass. 91; State v. Moore, supra; Foquet v. Hoodley, 3 Conn. 534; Poorman v. Mills, 35 Cal. 118; Kilgore v. Bulkley, 14 Conn. 362; Swift v. Whitney, 20 Ill. 144; Mitchell v. Easton, 64 N. Y. 155; Citizen's Bank v. Brown, 45 Oh. St. 39; Zane on Banks and Banking, sec. 161; Frank v. Wessels, 64 N. Y. 155; Talladega Ins. Co. v. Woodward, 44 Ala. 287; Baker v. Leland, 9 App. Div. (N. Y.) 365; Hunt v. Devine, 37 Ill. 137. (3) Deposit of moneys in bank subject to withdrawal only after notice for a specific time does not pass under a gift of ready money in bank or on hand. In re Wheeler, 52 Weekly Rep. 586; In re Price, 53 Weekly Reports 600; Mayne v. Mayne, 1 Irish Rep. 324.

*L. C. Dyer* and *Byron F. Babbitt* for respondents.

The cardinal rule of interpretation in construing wills is that the intention of the testator shall control. McMillan v. Farrow, 141 Mo. 55; Small v. Field, 102 Mo. 104; Clotilde v. Lutz, 157 Mo. 439; Simmons v. Cabanne, 177 Mo. 336.

REYNOLDS, P. J.—Mrs. Offutt, a widow, by her last will, duly probated, after providing for the payment of her debts, expenses of last illness and funeral expenses, bequeathed to her mother an insurance policy she held, and to her sisters and a niece "all cash on hand and in bank at time of my death, if any, to be divided equally between them." She devised and bequeathed to her adopted daughter, Delia Rucker, all the rest and residue of her estate, of every descrip-

tion, real, personal and mixed, including her homestead situate on Cottage avenue in St. Louis, as well as all furniture and household "effects" therein contained and every and all other property not therein above disposed of. The will is dated April 22, 1907, and Mrs. Offutt died April 26, 1907. On the 18th of April, 1907, that is eight days before her death, and four days before she made her will, Mrs. Offutt deposited with the National Bank of Commerce in St. Louis $700, taking a certificate of deposit in usual form, payable to her order on the return of the certificate six months after its date, in current funds, the deposit bearing no interest after maturity and not payable until the certificate is due. It was cashed after her death and at maturity by her executor. For a long period prior to her death, Mrs. Offutt maintained a cash deposit with a trust company, the deposit subject to her check. At the time of her death, she had $485 on deposit with the trust company. She had no deposit with the Bank of Commerce subject to check and her entire dealing with that bank was represented by the certificate of deposit before mentioned. She had no cash in hand at the time of her death. Her adopted daughter, Delia Rucker, died intestate on March 19, 1908. The executor of Mrs. Offutt exhibited his final settlement in the probate court of the city of St. Louis, by which it appeared that he had a balance of $937.98 cash on hand, which included the proceeds of the deposit certificate, and personal property of the appraised value of $127. The probate court ordered distribution as follows: To each of the sisters and the niece $262.24 2-3; to the public administrator in charge of the estate of Delia Rucker, deceased, $127 (the appraised value of the personal property), and $24.24 cash. The public administrator appealed from this to the circuit court, where on a trial on an agreed statement of facts, the substance of which we have given, and on the record, including the will, settlement, etc., the circuit court,

following the action of the probate court, made a like order of distribution. From this order the public administrator, as in charge of the estate of Delia Rucker, has duly perfected his appeal to this court.

It will be noticed that the whole controversy turns on the question as to whether the money on deposit with the Bank of Commerce, evidenced by the certificate of deposit, is to be considered as of "all cash on hand and in bank at time of" death of the testatrix. If so, it was to be equally divided between the two sisters and niece of the testatrix. If not, it went into the undisposed of portion of the estate, and fell to Delia Rucker, the adopted daughter, as residuary legatee, the executor of Mrs. Offutt having collected it in due course. Counsel for the administrator of Delia Rucker (herein referred to as the administrator), claims that cash means ready money and that a certificate of deposit is a mere promise to pay money and is a promissory note and not "cash," and that the deposit of moneys in bank subject to withdrawal only after notice for a specific time does not pass under a gift of ready money in bank or on hand.

In support of this latter proposition Mayne v. Mayne, 1 Irish Reports (1897), 324, is cited. The will there under construction made certain specific legacies, "and as regards whatever ready money may be found in bank, or interest accruing, at the period of my decease," after the payment of debts, etc., the testatrix directed that the surplus be divided between named charities. The Master of the Rolls held that the term "ready money" had a different signification from money itself, and he reached the conclusion that money deposited in bank on deposit certificates was not ready money. He states as one of the reasons for excluding the large amount which was in bank on deposit from these charitable bequests, that considering the length of time which had elapsed from the execution of the will and the death of the testatrix, and her

fortune at her death as compared to what it had been when she made the will, it is not to be supposed that she intended to include this. In the language of the Master of the Rolls (l. c. 341): "The testatrix never dreamt of leaving 6000 pounds or so to these charities. If they were entitled to capture it, it would be a mere accident, wholly independent of the intentions of the testatrix."

Another case relied on is In re Wheeler, 52 Weekly Reporter & Digest, 586 (1904). There the testator directed that his "ready money" be divided into four equal parts. The point in decision, so far as pertinent to the case at bar, was whether a certain sum passed under the disposition of "ready money." Following Mayne v. Mayne, supra, Mr. Justice Warrington held that the sum of money referred to was not ready money. No information is given as to the shape in which this sum was placed, so we are not aided by this case.

The third case cited is In re Price, 53 Weekly Reporter and Digest, 600 (1905). There it is held that money on deposit in a bank and subject to more than twenty-four hours notice of withdrawal, is not a "pecuniary investment" in its popular meaning and will not, in ordinary circumstances, pass under a gift of "ready money," contained in a will. Here, as in the Mayne case, the meaning of the terms was sought by an examination of the will in an effort to arrive at the true intent of the testator.

The cases cited by counsel for appellant under his other propositions are, in the main, cases under commercial law, the law merchant, generally arising between the bank and its depositor. In such cases that the term "cash" ordinarily means money which the owner has in hand or subject to his right of immediate possession, and that a certificate of deposit, the sum to remain on deposit for a time stated, is not ordinarily treated as "cash on hand or in bank," may be con-

ceded. Mr. Daniel, however, in 2 Daniel, Negotiable Instruments (5 Ed.), treating of the nature of a certificate of deposit issued by a bank says (section 1698, p. 717): "The very nature of the instrument and the ordinary modes of business show that a certificate of deposit, like a deposit credited in a pass book, is intended to represent moneys actually left with the bank for safe keeping, which are to be retained until the depositor actually demands them." We are construing a will, in which act we are commanded by statute, as well as by an unbroken line of decisions of our Supreme Court, to construe it so as to effectuate the intent of the testatrix. This testatrix, a colored woman, as we are told by counsel, was not a woman of large means. She was a widow. She had no children of her own. Her blood relations were her mother, two sisters and a niece, and Delia Rucker was her adopted daughter. It is obvious from reading her will and having in mind the amount of property at her disposal —and she died within a few days after making her will— that she intended to make, as nearly as possible, an even distribution of her estate among those nearest her in blood and by affection. If this deposit is held to be of her "cash on hand and in bank at time of" her death, then sending it to her sisters and niece does make a very nearly equal distribution of her estate; if it goes to her adopted daughter as residuary legatee, she shares largely in excess of any of the others. The specific legacy and devise to this adopted daughter is the homestead, all the furniture and household effects contained and every and all property not otherwise disposed of. If this deposit of $710.50 is to go to the adopted daughter in addition to the above, the share of the sisters and niece are mere pittances. We venture to say that among the great mass of our people, whether educated or not, and aside from those engaged in business that brings them into relations with banks, that when they speak of having "money in bank," they

regard that on time deposit just as entirely and safely "in bank" as that entered in their pass books and at their order by check. It does not occur to them that they hold a mere note of the bank, as would be the case of a loan to an individual: they think of it and speak of it as money—even as cash—in bank. The bank itself, in its certificate, calls it a deposit. The learned and experienced probate judge, as well as the circuit judge, took this view of it and awarded distribution accordingly. That is also our view.

The judgment of the circuit court is affirmed. *Nortoni* and *Caulfield*, *JJ.*, concur.

