In the Matter of the Estate of CHRISTOPHER FEIST, Deceased.

Surrogate's Court, Monroe County, March 13, 1939.

*C. B. Bechtold,* for Harry M. Feist and Charles B. Bechtold, as executors, etc., petitioners.

*C. W. Butler,* for Eleanor Trowell.

FEELY, S. The will to be construed herein was signed on May 9, 1935, about three years and a half before testator's death. It

was attested by the lawyer in whose office it was drawn and typed; and presumably he dictated the wording necessary to carry out his client's intentions.

Testator left no real estate, but over $10,000 in personal property. The bulk of this consists of two accounts in savings banks, totaling $9,455.90. There was found in the home at the time of death the sum of $2 in testator's purse. Testator's financial standing at the time the will was drawn may be said to have been substantially the same as it was at his death. He left only a son, Harry M., and a daughter, Eleanor Trowell. The will also names as a legatee a granddaughter, who is the child of testator's son, Harry.

The will provides first for payment of debts and funeral expenses; and then continues:

"*Second.* I give and bequeath all of my cash on hand at the time of my decease to my son, Harry M. Feist, to my daughter, Eleanor Trowell * * * and to my granddaughter, Geraldine R. A. Feist * * * the same to be divided between them share and share alike.

"*Third.* The proceeds of any claims which I may have against the estate of Barbara Feist, deceased, I give and bequeath to my son * * * and to my daughter * * *

"*Fourth.* All the rest, residue and remainder of my property * * * I give devise and bequeath * * * to my son, * * * and to my daughter."

The rest of the will is not pertinent to the present matter.

The question presented is whether the phrase "all of my cash on hand at the time of my decease" takes in the two bank accounts, or is to be applied only to the two dollars in currency found in the home at death. If the latter view be taken, it will practically cut off, with the mere pittance of sixty-six cents, the granddaughter who is one of the three persons named in the "second" paragraph to share equally "all of my cash on hand." The testator meant this granddaughter should share in some substantial manner, although a greater portion of the estate is given to the son and daughter. The granddaughter does not share in the proceeds of the claim mentioned in paragraph "third" which consists of mortgages totaling $1,500; nor does she share in the residue of the estate, which comprises household furniture and household effects, tools, etc.

The will having been drawn up under able legal supervision, its wording can be read in the light of the common way in which such terms are used by experienced persons of affairs. There is little to be gained by trying to fathom any other particular

intention this lay testator may have had in mind when he gave the lawyer the instructions for drawing up this will.

Considering the language of the will by itself, one is led to the same conclusion that would result from the testimony of the draftsman to the effect that testator, in instructing him as to his testamentary plan, said he wished his " money " to be divided among the three persons named.

Without stressing this extraneous evidence, one can well say that experienced persons, in speaking of the medium of commercial exchange, sometimes use interchangeably the terms " money " and " cash," although the former, the more general term, by its root sense stresses the genuinity of the medium or token, whereas " cash," which derives from a root meaning a chest or box wherein money is kept or deposited, stresses rather the readiness of the medium, as distinct both from " credit," and from slow assets.

" There is a settled distinction," said Chancellor KENT in 1814, " on this subject, of the construction of wills, between cash or money, and choses in action. * * *. Thus, cash will pass by a bequest of moveables, but the better opinion * * * is, that money at interest will not pass, because it is a debt, and not cash," and " Perhaps it would be proper to extend the term [money] to money deposited in bank, for that is cash, and considered and used as cash placed there for safe keeping, in preference to the chest of the owner." (*Mann* v. *Mann*, 1 Johns. Ch. 231, 236.)

" Cash " means especially " ready money " at command, subject to free disposal; not tied up in a fixed state. It is almost the equivalent of the term " loose money," which occurred in *Matter of Werry* (35 N. Y. St. Repr. 365) without being discussed there in detail except to hold that it was not broad enough to include the proceeds of land that the will directed to be sold. So, a bequest of the moneys of which testator died possessed entitled the legatee to " cash, using the term in its popular sense, which at the time of his death testator had in his possession, or deposited in bank, and to nothing else." (*Beck* v. *Gillis*, 9 Barb. 35, 59.)

In order to avoid intestacy, the term " cash money " was broadly taken to mean money in bank, loan association shares and all the personal estate in *Matter of McKendrie* (150 Misc. 665). There the court said: " The broad meaning of the word ' cash ' has been held to include bank deposits (*Beit* v. *Beit*, 98 Conn. 274; 119 A. 144); and to include money in the treasury or deposited in banks (*American Brake Shoe & Foundry Co.* v. *New York Rys. Co.*, 277 Fed. 261); and to. mean money which the owner has on hand, or subject to his right of immediate possession (*Offutt* v. *Troll*, 159

Mo. App. 90; 139 S. W. 487).'' So, in *Baldwin* v. *Baldwin* (107 N. J. Eq. 91) testatrix willed a set sum, if she should have $10,000 left net in her estate. To avoid a partial intestacy that would otherwise result, the court there held that the terms '' cash '' and '' money '' included bank accounts, loan association shares, Liberty bonds and some stocks.

This Feist will, in using the words '' cash on hand,'' merely emphasized by the phrase '' on hand '' the characteristic of '' cash '' as signifying a specific quick asset. Thus in *Matter of Banfield* (137 Ore. 256, 285; 299 P. 323) the court held a bequest to a husband of '' cash on hand '' included money in a solvent bank that was subject to checking.

A case almost identical on its facts with those now in hand was decided in Iowa in 1921 under the will in *Matter of Johnston* (190 Iowa, 679, 682; 180 N. W. 740), where some bequests were charged against '' the cash I may have on hand at the time of my death,'' but other bequests were charged against the '' proceeds of sales of notes and accounts.''

At testator's death '' there was no cash on hand, in a literal sense, except the amount of $4.53.'' The residuary legatee claimed that certificates of deposit should be classified as notes, which would result in defeating wholly the $17,000 of legacies charged on the cash on hand. The certificates had matured before testator's death; but the notes had still a year to run before their maturity. The pertinency of this may be noted, in passing, by reference to the ruling in *Offutt* v. *Troll* (*supra*) where the Missouri appellate court held that because a certificate of deposit had to remain out for a stated time, it could not be regarded as '' cash on hand or in in the bank.'' The Iowa court in the *Johnston* case wrote: '' In ascertaining the intention of a testator from the terms of his will, account must be taken of common parlance, which is often quite unconscious of the technical meaning of legal terms. Under present-day methods, ' cash in hand,' in a literal sense, is virtually nonexistent. The more the ' cash,' the less likelihood that it will be kept literally ' in hand.' The deposits of the testator were in the bank of which he was a part owner. * * * Some emphasis has been laid by appellant upon the expression ' cash in hand.' But the will in terms refers to ' cash *on hand.*' Whatever distinction is to be recognized between the two expressions, the terms actually used will not bear the emphasis thus put by appellant. Money in bank is money in hand. This is conceded by appellant as to money subject to check. * * * Cash on hand was intended to include the quick assets out of which payment could be made

without delay." Apparently, Mr. Johnston had drawn his own will.

My conclusion, therefore, is that this will of Mr. C. P. Feist, drawn up and executed as it was under legal supervision, was meant to be understood in the proper and technical sense of the terms used; and that the term " cash on hand " was proper and suitable, and was intended by testator to convey not only coins, or bills, or currency found on his person or in his home at death, but also the bank deposits; but not any other similar movable property, nor any other personal property whatsoever, because this particular will excepts the proceeds of the claim against the estate of Barbara Feist; and provides finally for disposition of " all the rest " of testator's estate to others than the granddaughter. The testator's granddaughter is entitled only to one-third, both of the two savings bank deposits, and also the two dollars, in the usual course of administration.

Enter a decree in accord herewith.