488 P.2d 1015

In the Matter of the ESTATE of Ruth B. MORRIS, Deceased.

Robert H. ALLEN, Guardian of the Estate of Beth B. Eakin, an incompetent, Appellant,

v.

Virginia ROYCE et al., Appellees.

No. 1 CA–CIV 1597.

Court of Appeals of Arizona, Division 1.

Sept. 28, 1971.

Allen, McClennen & Fels by John V. Fels, Phoenix, for appellant.

Ryley, Carlock & Ralston by John C. Ellinwood, and James D. O'Neil, Phoenix, for appellees Royce, Ewing, Widle and Speer.

Hughes, Hughes & Conlan, by John C. Hughes, Phoenix, for appellee John C. Hughes.

Gary K. Nelson, Atty. Gen., by Ralph E. Willey, Asst. Atty. Gen., Phoenix, for appellee Arizona Board of Regents.

Kaplan, Wilks & Abrams by Richard B. Wilks, Phoenix, for appellees Walker, Walker and Stokley.

HATHAWAY, Judge.

The decedent's last will and testament, a typed will executed by her and attested by two witnesses, was admitted to probate together with a holographic codicil. The holographic codicil was not witnessed.

The decedent provided in her will that her entire estate, with the exception of a scholarship trust, was to go to her sister, Beth Eakin, the appellant. She further provided that should her sister predecease her, then the portion to which her sister would have been entitled was to go to appellees, Grace Walker, Virginia Royce, Alice Ewing, Nora Widle and Ruby Speer. The will was modified by the following pertinent paragraph from the holographic codicil:

"To my sister, Beth Burns Eakin, I leave any property I own and one-third of cash. The rest of cash, after last

expenses, to be divided equally among those friends and cousins mentioned in will."

This appeal is from the court's decree determining heirship and upholding the effectiveness of the holographic codicil. Three questions are presented for review. First, does the unwitnessed holographic codicil revoke the legacy to Beth Eakin contained in the witnessed will. If so, then we must determine whether any portion of the expenses is chargeable against Beth Eakin's one-third of the cash, and finally, whether certain items were properly classified as "cash."

In considering the major issue presented, whether an unwitnessed holographic codicil can revoke a legacy provided in a witnessed will, we must bear in mind A.R.S. § 14–126, relied upon by appellant and which provides:

"A will or any clause or devise therein may be revoked only by:

1. A subsequent will, codicil, or declaration in writing *executed with the same formalities as the will revoked."* (Emphasis added)

It is appellant's contention that since the codicil in question was not witnessed, it was not "executed with the same formalities as the will revoked." No Arizona cases have dealt with the problem. The best authority appellant has been able to present in support of her position appears to be controlled by a specific statute providing that no holographic will without subscribing witnesses " * * * shall be pleaded in bar of a will subscribed in due form as prescribed in this act." Ark.Stat.Ann. § 60–104 (1947) ; Parker v. Hill, 85 Ark. 363, 108 S.W. 208 (1908) ; McPherson v. McKay, 207 Ark. 546, 181 S.W.2d 685 (1944).

Appellees have examined the predecessor statutes of A.R.S. § 14–126 to explore the meaning of the statute and the legislative intent as it relates to the problem. The statute is traced from the Revised Statutes of Arizona, Title XIV, § 3236 (sec. 5) (1887), taken from Revised Stat-

utes of Texas, Title XCIX, Art. 4861 (1879). Identical language was carried into the Arizona Revised Statutes in 1901 and 1913, the only change being an additional clause in § 4216 (sec. 5) of the 1901 Code providing for revocation by subsequent remarriage.

The Revised Code of Arizona of 1928 adheres to the following language in the equivalent sections of Chapter 83:

"§ 3637. *Form and execution; holographic.* Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator, or by some other person in his direction and in his presence, and shall, *if not wholly written by himself,* be attested by two or more credible witnesses, above the age of fourteen years, subscribing their names thereto in the presence of the testator. *When it is wholly written by the testator, the attestation by subscribing witnesses is not necessary.*

§ 3638. *Revocation; marriage.* No will made in conformity with the preceding section, nor any clause or devise therein, shall be revoked except by a subsequent will, codicil or declaration in writing *executed with like formalities,* or by the testator destroying, cancelling or obliterating the same or causing it to be done in his presence. * * *" (Emphasis added)

The above two sections were picked up in identical language in Arizona Code Annotated 1939 §§ 41–102 and 41–103. After the 1939 Code was revised, the foregoing provisions appeared in the following form in Ariz.Rev.Stat.Ann. (1956):

"§ 14–121. *Form and execution of wills*

Except as otherwise provided by law, every will shall be in writing and signed by the testator, or by some other person by his direction and in his presence, and shall, if not wholly written by the testator, be attested by two or more credible witnesses who are fourteen or more years old, subscribing their names thereto in the presence of the testator.

§ 14–122. *Effect of legacy or devise when legatee or devisee is subscribing witness * * **

§ 14–123. *Holographic will*

A holographic will is one entirely written and signed by the hand of the testator himself. Attestation by subscribing witnesses is not necessary in the case of a holographic will.

\* \* \* \* \* \*

§ 14–126. *Revocation of will*

A will or any clause or devise therein may be revoked only by:

1. A subsequent will, codicil or declaration in writing executed with the same formalities as the will revoked.

2. Destruction, cancellation or obliteration of the will by the testator or caused by him to be done in his presence."

In the statutes preceding Ariz.Rev.Stats. Ann. (1956) holographic wills are accorded equal weight, reliability and formality as a witnessed will. Any apparent modification of their equality caused by the Code revisors would be ineffective. Ariz. Rev.Stat.Ann. § 41–1304.02 provides:

"The director of the Arizona legislative council * * * *shall not alter the sense, meaning or effect of any act of the legislature, but may renumber sections and parts of sections; rearrange sections, articles, chapter and titles; change reference numbers to agree with renumbered sections, articles, chapters or titles; substitute the proper section, article, chapter or title for the terms 'the preceding section', 'this article', 'this act' and like terms;.* \* \* \* *The director shall not undertake to make any change of existing laws, it being the intention of this section that the director shall in no manner assume to exercise legislative power."* (Emphasis added)

See Peterson v. Central Arizona Light & Power Co., 56 Ariz. 231, 107 P.2d 205 (1940); City of Tucson v. Tucson Sunshine Climate Club, 64 Ariz. 1, 164 P.2d 598 (1945); State v. Datsi, 11 Ariz.App. 132, 462 P.2d 825 (1969).

Our statutes were taken from Texas. Counsel indicate that the Texas courts have not dealt with the problem. The following cases, however, if not holding, strongly suggest that the Texas courts have accorded holographic testamentary instruments the same legal efficacy as attested instruments. Further, those courts have apparently construed the language "like formalities" to mean complying with the due formality and legal requirements necessary to validate the subsequent instrument itself and as not referring to the formalities attending the execution of the prior instrument. See Brackenridge v. Roberts, 114 Tex. 418, 267 S.W. 244 (1924); Sien v. Beitel, 289 S.W. 1057 (Tex.Civ.App. 1926); Pullen v. Russ, 209 S.W.2d 630 (Tex.Civ.App.1948); Baptist Foundation of Texas v. Buchanan, 291 S.W.2d 464 (Tex.Civ.App.1956); Covington v. McDonald, 307 S.W.2d 335 (Tex.Civ.App. 1957); Bell v. Burton, 370 S.W.2d 18 (Tex.Civ.App.1963); modified, 380 S.W.2d 561 (Tex.1964); Huckaby v. Huckaby, 436 S.W.2d 601 (Tex.Civ.App.1968). The Texas cases are in accord with the general rule that holographs and witnessed wills are of equal weight and formality. See In re Smith's Estate, 31 Cal.2d 563, 191 P.2d 413 (1948), where the testatrix effectively revoked a witnessed will by writing across an unexecuted carbon copy that it was revoked and null and void, and by dating and signing the holographic revocation; In re Cazaurang's Estate, 42 Cal. App.2d 796, 110 P.2d 138 (1941), where a holograph was revoked by a witnessed will and then revived and revised effectively by a subsequent holograph. Also see In re Wallace's Estate, 100 Cal.App.2d 237, 223 P.2d 284 (1950); In re Holmes' Estate, 191 Cal.App.2d 285, 12 Cal.Rptr. 629 (1961); In re Sargavak's Estate, 41 Cal.2d 314, 259 P.2d 897 (1953); In re Salmonski's Estate, 38 Cal.2d 199, 238 P.2d 966 (1951); 2 W. Page, Wills § 21.37, at 400 (rev. ed. 1960); 57 Am.Jur. Wills §§ 466, 651 (1948); 50 A.L.R.2d 11, 50 (1958).

Cases in jurisdictions other than California dealing with the subject are: Hessmer v. Edenborn, 196 La. 575, 199 So. 647 (1940); In re Paul's Estate, 12 Misc. 2d 194, 175 N.Y.S.2d 93 (Surr.1958); Northcross v. Taylor, 29 Tenn.App. 438, 197 S.W.2d 9 (1946); Ward v. Curry's Executor, 297 Ky. 420, 180 S.W.2d 305 (1944).

■ We are satisfied that under the Arizona statutes a holograph and a witnessed will are of equal formality, and that the holographic codicil here effectively modified the witnessed will.

The trial court held that all bequests were charged with their "proportionate share of the expenses." Appellant urges that the wording in the codicil shows an intent that the sister's portion was to come from the gross estate and that this intent is demonstrated through the careful placing of "after last expenses" in the codicil which we again set forth to facilitate considering the question:

"To my sister, Beth Burns Eakin, I leave any property I own and one-third of cash. The rest of cash, *after last expenses,* to be divided equally among those friends and cousins mentioned in will." (Emphasis added)

Had the decedent intended her sister's share to bear a proportionate portion of expenses, appellant contends she would have said:

"To my sister, Beth Burns Eakin, I leave any property I own *and one-third cash after last expenses.* The rest of cash to be divided equally among those friends and cousins mentioned in the will." (Emphasis in appellant's brief)

Appellees point out that the will and codicil are to be regarded as a single instrument insofar as possible, citing 57 Am.Jur. Wills § 608, at 416–417 (1948):

"It is the well-settled general rule that for the purpose of determining the testamentary intention and disposition of the testator, a will and codicil thereto are to be regarded as a single and entire instrument * * *

* * * The court is called upon to construe a codicil as consistent with the will if possible; it should not be allowed to vary or modify the will, unless such is the plain intent of the testator."

■ Intent appears clearly expressed that her sister receive one-third of the cash unencumbered by last expenses and that the "rest of cash", i. e., the remainder after the sister's portion, after it has met the last expenses, is "to be divided equally among" the other devisees. This intent clearly expressed in the codicil must be carried out. The intent concerning the payment of last expenses is more specifically dealt with in the codicil than in the will and effect must be given to the testatrix's intent as expressed in the codicil. By "last expenses" we conclude that the codicil refers to "the liabilities which attach as a result of law to * * * [the] estate as a result of settling the estate and paying the expenses incident to the last illness and death." Hill v. Hill, 37 Ariz. 406, 411, 294 P. 831, 833 (1931). It is therefore ordered that no proportionate part of the last expenses, as defined above, should be charged against the appellant's "one-third of cash."

■ We must finally determine whether traveler's checks, bank or savings and loan accounts, a certificate of deposit and government savings bonds, which are not demand deposits, are properly classified as "cash" as used in the decedent's will.

Appellant acknowledges that checking accounts are generally regarded as cash. She further acknowledges that there are no legal restrictions on the owners of traveler's checks. But she submits we should take judicial notice of the basic advertising approach to exhort a traveler to carry traveler's checks "in lieu of cash." Neither party has offered authority in support of their relative positions regarding the traveler's checks. We do not find the question troublesome, however, as we are persuaded that the lack of legal restrictions or any limitations for that matter on the right to the funds, save endorsement, is such as to

render traveler's checks tantamount to cash.

Appellant would distinguish the remaining assets in question on the basis of "demand" deposits, to be regarded as cash and "time" deposits, not regarded as cash. Such reasoning is not without support. Thompson v. Thompson, 149 Tex. 632, 236 S.W.2d 779 (1951). Nevertheless, our paramount consideration remains to carry out the intention of the testatrix where at all possible. In re Conness' Estate, 73 Ariz. 216, 240 P.2d 176 (1952); In re Stadler's Estate, 177 Cal.App.2d 709, 2 Cal. Rptr. 515 (1960).

In the instant case the will was written by an elderly lady without immediate family. She was untrained in the law and we cannot assume this layman was possessed of the knowledge or expertise in preparing a will as to require a rigid application of technical definitions. This case is not unlike In re Stadler's Estate, supra, wherein the court stated:

"In the instant case we have a holographic will written by a person undoubtedly devoid of legal training. Under the circumstances it is doubtful if, in relation to testamentary disposition, she knew any distinction between different forms of property. She did make a will which in itself indicates that it was not her intention to die intestate and it would be strange indeed if she did not intend to dispose of her entire estate. The fact that she made no mention of her bonds in the will nor of a promissory note is some indication that she made no distinction between 'money' and other kinds of property. It is, therefore, reasonable to assume that the testatrix was using the word 'money' in its most flexible scope. Under such circumstances it was not unreasonable for the trial court to conclude that the final sentence was meant to dispose of the remainder of the estate and that the phrase 'money left over when Settled' was meant to refer to the remainder of the estate and not to the remainder of the cash." 2 Cal.Rptr. at 517.

See also In re Feist's Will, 170 Misc. 497, 10 N.Y.S.2d 506 (1939); In re Estate of Graham, 4 Ariz.App. 193, 419 P.2d 97 (1966). Keeping in mind that the testatrix's intention will control where possible, we examine appellant's contentions regarding the remaining assets in question.

The thrust of appellant's argument regarding the savings accounts is that since the bank can require a period of notice before withdrawals the accounts are not "demand" and thus not cash. The record, however, reveals evidence that as a practical matter the right of notice is not invoked and funds are delivered to depositors upon presentation of a signed withdrawal slip. The court in In re Flynn's Estate, 69 N.J.Super. 544, 174 A.2d 520 (1961) noted the right of banks to withdrawal notice but held that savings accounts passed under a residuary clause as "cash" rather than "property" stating:

"* * * actual use of such a requirement [notice] has been so rare among banks that no informed person would think of a savings account as anything but a cash asset." 174 A.2d at 523.

See also In re Feist's Will, supra; In re Storm's Will, 205 Misc. 1109, 130 N.Y.S.2d 521 (Surr.1954). There being no contrary intent shown from the language of the amended will or from the circumstances surrounding the creation of the will we find it was testatrix's intention to include her savings accounts in the cash provisions.

Appellant relies on Thompson v. Thompson, supra, in contending the time certificate of deposit is not a demand instrument and thus not cash. There the court said that the certificates constituted negotiable instruments which were in effect the promissory notes of the issuing bank and not "cash on hand." This reasoning is weakened, however, by examination of a number of other cases holding that promissory notes were included in the term "cash" in order to effectuate the intent of the testators. See In re Carrillo's Estate, 187 Cal. 597, 203 P. 104 (1921); In re Flynn's Estate, supra; Flower v. Dort, 260 S.W.2d 685 (Tex.Civ.App.1953). Moreover, we are

convinced that the following language from In re Offutt's Estate v. Troll, 159 Mo.App. 90, 139 S.W. 487 (1911) is more pertinent under the circumstances of this case:

"We venture to say that among the great mass of our people, whether educated or not, and aside from those engaged in business that brings them into relation with banks, that when they speak of having 'money in bank,' they regard that on time deposit just as entirely and safely 'in bank' as that entered in their pass books and at their order by check. It does not occur to them that they hold a mere note of the bank, as would be the case of a loan to an individual: they think of it and speak of it as money—even as cash—in bank. The bank itself, in its certificate, calls it a deposit." 139 S.W. at 489.

We recognize that the testatrix could not have cashed the certificate without presenting the bank a "letter of hardship." Further, the certificate did not mature until May of 1967 some six months after Mrs. Morris died. Nevertheless, appellant has not persuaded us that it was testatrix's intention to have the certificate considered anything other than cash and we so find.

Savings bonds have been held not to be within the meaning of the term cash. In re Chamberlain's Estate, 46 Cal.App.2d 16, 115 P.2d 235 (1941); McCulloch v. McCulloch, 232 Ark. 413, 337 S.W.2d 870 (1960). The court in *McCulloch,* noted, however, that in other circumstances, as where a part of the estate would be undisposed, that a broader meaning could be given to the word cash. Similarly in In re Chamberlain's Estate the court declared that since a residuary clause existed a meaning could be given to cash which would not include bonds. There are other cases where a contrary decision was reached and bonds were held included in cash. See Baldwin v. Baldwin, 107 N.J.Eq. 91, 151 A. 741 (1930); Hinckley v. Primm, 41 Ill.App. 579 (1892); In re Master's Will, 136 N.Y.S.2d 907 (Surr.Ct.1954); In re Bruin's Estate, 370 Mich. 34, 120 N.W.2d 752 (1963); In re Storm's Will, supra;

Lane v. Railey, 280 Ky. 319, 133 S.W.2d 74 (1939). Appellees submit, however, that none of the cases cited by either party are in point as they all deal with unmatured bonds whereas the Series E bonds in the instant case were mature at the time of Mrs. Morris' death. They rely on the rationale of In re Estate of Graham, supra, since the matured bonds could have been cashed at Mrs. Morris' convenience and "were readily convertible into cash." While we believe that the testatrix meant the bonds to be incuded in "cash" as she used the term, we do not think that the time of maturity is controlling.

In the original attested will all of the estate except for certain specific legacies and devises were left to appellant. Appellees were to take the entire estate only in the event that appellant predeceased Mrs. Morris. The codicil was added approximately three years later. A fair construction and the most likely intention to be found from the language and circumstances is that Mrs. Morris was to leave her sister her personal effects or property and one-third of her cash assets. The remaining two-thirds of the cash assets to be divided among the four appellees. If the assets in question were not meant by testatrix to have been cash she would have died intestate as to them. The distinction, we believe, Mrs. Morris made was between her physical property (automobile, gold coins, etc.) and her money assets. In amending her attested will by the codicil Mrs. Morris intended to give those parties that were only contingent takers an absolute right to share in a portion of her estate considered by herself as a layman to be cash.

The judgment is modified to permit appellant to take her share unencumbered by last expenses as defined above. The judgment is otherwise affirmed.

KRUCKER, C. J., and HOWARD, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.