[Civ. No. 31411. First Dist., Div. Two. Dec. 20, 1972.]

Estate of ELSIE M. O'CONNELL, Deceased.
CON S. SHEA, as Public Administrator With the Will Annexed, etc.,
Petitioner and Respondent, v.
MARTHA ARNOLD, Claimant and Appellant;
ST. BRIGID'S CHURCH, Claimant and Respondent.

## COUNSEL

O'Donnell, Waiss, Wall & Meschke, Richard J. Wall and Elizabeth G. Leavy for Claimant and Appellant.

No appearance for Petitioner and Respondent.

John F. Duff for Claimant and Respondent.

## OPINION

**TAYLOR, P. J.**—This is an appeal by an intestate heir from a portion of a probate decree determining that she had no interest in the estate of her deceased sister, Elsie O'Connell. The only question presented is whether the trial court properly held that the language of the holographic will bequeathing "all remaining cash in my accounts" to respondent, St. Brigid's Church, included a $17,000 certificate of deposit. We conclude that the interpretation adopted by the trial court accords with the intention and objectives of the testatrix and should be affirmed.

The facts as found by the court are as follows: On July 18, 1968, Elsie O'Connell wrote a valid holographic will that, by the first eight paragraphs, bequeathed specified sums of cash to several charitable and religious institutions, a piece of jewelry to each of two nieces, and the contents of her apartment to Mrs. Pietras. The will then continued: "To St. Brigid's Church after all expenses and bequests have been paid all remaining cash in my savings and checking accounts at the Wells Fargo Bank, Grant and Market Sts. Also government bonds amounting to $1969.75 (one thousand nine-hundred sixty-nine dollars and seventy-five cents) plus accrued interest.

"I would request that one hundred masses be said for the repose of the souls of Dennis and Elsie O'Connell Five hundred dollars be used for the above request.

"Signed

"Elsie M. O'Connell.

"Also to St. Brigid's Church the savings at Crocker Citizen's National Bank at Filmore and Chestnut."

On March 8, 1968, about four months before she signed the holographic will, the testatrix changed the form of the major portion of her savings

account at the Wells Fargo Bank by transferring $17,000 from that account to a certificate of deposit. This certificate, issued on March 8, 1968, was a non-negotiable term certificate that matured on September 8, 1968, with a provision for automatic renewal for successive periods of three months each. The certificate recited that it was nontransferrable, nonassignable and not subject to withdrawal prior to maturity, and provided for deposit of the five percent quarterly interest to the savings account.

At the time of Elsie O'Connell's death on July 10, 1969, the next maturity date for the certificate of deposit was September 8, 1969. Her estate was appraised at $32,145.93; the principal assets, in addition to the certificate, were the Wells Fargo Bank accounts (checking $1,844.42; savings $4,152.93), the Crocker Citizens savings account ($3,990.69), and U.S. Savings Bonds ($4,296.49). Her only heirs at law were the two nieces mentioned in the will and appellant. The holographic will dated July 18, 1968, was duly admitted to probate on August 14, 1969. Thereafter, the public administrator filed the instant petition for a determination of interest and interpretation of the will. The court found that by the language of paragraph 9, "all remaining cash" in her accounts at Wells Fargo Bank, the testatrix intended to include in her bequest to St. Brigid's Church that portion of her savings on deposit evidenced by the $17,000 certificate of deposit.[1] This appeal is from that portion of the ensuing order adverse to the interest of appellant, Martha Arnold.

Appellant correctly points out that the question is one of law. Since the record in the present case indicates that no extrinsic evidence was admitted, we must arrive at an independent interpretation of the will (*Estate of Russell,* 69 Cal.2d 200, 212 [70 Cal.Rptr. 561, 444 P.2d 353]). The paramount rule in the construction of wills to which all other rules must yield is that the will is to be construed according to the intent of the testatrix as expressed therein and this intent must be given effect as far as possible (Prob. Code, § 101; *Estate of Dodge,* 6 Cal.3d 311, 324 [98 Cal.Rptr. 801, 491 P.2d 385]). Further, as the will was a holographic one, it should be interpreted in a layman's sense (*Estate of Henderson,* 161 Cal. 353, 358 [119 P. 496]). The entire document must be examined as a whole and the will cannot be interpreted without considering the circumstances surrounding its execution (*Estate of Russell, supra,* pp. 208-211).

As we said in *Estate of Olsen,* 9 Cal.App.2d 374, at page 379

---

[1]In view of this finding, the court found it unnecessary to determine whether the bequests to St. Brigid's Church should also be considered gifts of the residue.

[50 P.2d 70]: "In construing said will, we must bear in mind that 'The very fact of making a will raises a presumption that the testatrix intended to dispose of all of her property.' (26 Cal.Jur., p. 899.) Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given which will prevent intestacy. While this rule is codified as to total intestacy (Prob. Code, sec. 102), the principle is also applicable to avoid partial intestacy. [Citations.] In other words, constructions which lead to either total or partial intestacy are not favored. [Citations.] We must further bear in mind that technical words are not always to be taken in their technical sense when used in a will. A non-technical meaning may be given to such words where the will is drawn solely by the testatrix and it appears that she was not familiar with such technical terms. [Citations.]" Thus, where, by the terms of the will, it is not made clear that intestacy, either partial or whole, was intended, an interpretation which avoids intestacy will be adopted (*Estate of Northcutt,* 16 Cal.2d 683 [107 P.2d 607]).

■ Appellant here argues that in essense, the word "cash," in its ordinary sense, means money or its equivalent, and should be so construed unless a different intent appears on the face of the will (Prob. Code, § 106).[2] The presumption of technical meaning established by section 106 is subordinate to the dominant purpose of finding and effecting the intent of the testator; it is an aid to be used in ascertaining that intent, not a tool by which the court frustrates the testator's objectives. The testator's intent cannot be governed from the technical meaning of one phrase, but only from the will as a whole (*Estate of Dodge, supra,* pp. 324-325).

■ In examining the entire holographic will of Elsie O'Connell, it is readily apparent that her general scheme and dominant purpose was to leave her estate for religious and charitable purposes as only the two rings and contents of her apartment (valued at $150) were not so bequeathed. Appellant, although a close blood relative, was not even mentioned. Once the testamentary scheme or general intention is discovered, the meaning of particular words and phrases is to be subordinated

---

[2]The statute provides: "The words of a will are to be taken in their ordinary and grammatical sense, unless a clear intention to use them in another sense can be collected, and that other can be ascertained. Technical words are not necessary to give effect to any species of disposition by a will; but technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention, or unless it satisfactorily appears that the will was drawn solely by the testator, and that he was unacquainted with such technical sense."

to this scheme, plan or dominant purpose (*Estate of Hollingsworth*, 37 Cal.App.2d 432 [99 P.2d 599]).

Also, by the terms of the will, St. Brigid's Church was the chief beneficiary. That the testatrix intended that the balance of all her savings on deposit at the Wells Fargo Bank should go to St. Brigid's Church, rather than that half of her estate should devolve by partial intestacy to appellant, an unmentioned heir at law, is entirely consistent with the general scheme and dominant purpose in leaving most of her estate to religious and charitable institutions.

 Further, her dispositive language "all cash remaining in my savings and checking accounts" embraces all of her bank deposits at the Wells Fargo Bank, including the checking account, the pass book account and the certificate of deposit. Among the significant circumstances surrounding the execution of the will and also indicative of the intent of the testatrix, is the fact that only a few months before she wrote the holographic document, she converted the major portion of her savings at the Wells Fargo Bank to the $17,000 certificate of deposit. The certificate of deposit first matured on September 8, 1968, less than two months after she had completed the will, and then matured successively every three months thereafter with the interest deposited in her savings account. Thus, although on its face the certificate was non-negotiable and non-assignable, it was probably regarded by her as readily available savings in the sense of ready money. Like most laymen, the testatrix apparently looked on her savings on deposit with the Wells Fargo Bank as indistinguishable, whether represented by the savings pass book or the certificate of deposit.

While we are aware that at least one case in another jurisdiction[3] has held that the word "cash" does not include certificates of deposit but is limited to currency and negotiable instruments, even if we were inclined to follow the cases cited by appellant, we think it would be an unduly technical interpretation of a holographic will. Appellant conven-

---

[3]For instance, in *Thompson* v. *Thompson* (1951) 149 Tex. 632 [236 S.W.2d 779], the testator bequeathed to his children "all cash money that may be on hand at the time of my decease" and the Texas Supreme Court held (at pp. 790-791) that negotiable certificates of deposit were not included within the meaning of the term "cash money" as the certificates were not payable on demand and had not matured by the death of the testator so that the money was not available to him at the time of his death. In *Stewart* v. *Selder* (Tex. 1971) 473 S.W.2d 3, the court, relying on extrinsic evidence, concluded that the term "cash" did not include certain securities, and that in the absence of a residuary clause, the securities were to be distributed, according to the laws of descent, to the half brothers and sisters who were not mentioned in the will.

iently disregards that part of Probate Code section 106, which states that technical words are not to be taken in their technical sense where the will was drawn solely by a testator unacquainted with the technical sense. As noted in *Estate of Chamberlain,* 56 Cal.App.2d 458 [132 P.2d 488], also cited by appellant, manifestly the word "cash" cannot be given a definition that will fit all cases, particularly in wills, where the sense in which it is used by the testator is controlling (at p. 465). The court in *Chamberlain* held that a certificate of deposit from an insurance company was cash within the meaning of the will. Thus, the fact that in the prior appeal the court held that "cash" meant "ready money" and, therefore, did not include stock and U.S. Savings Bonds, is of no great help to appellant here (*Estate of Chamberlain,* 46 Cal.App.2d 16 [115 P.2d 235]).

Appellant's argument also overlooks the fact that the testatrix here did not simply bequeath "cash" but "all remaining cash in my savings and checking accounts at the Wells Fargo Bank." Thus, the case is analogous to *In re Offutt's Estate* (1911) 159 Mo.App. 90 [139 S.W. 487] (bequest of " 'all cash on hand and in bank at the time of death' "), and *Lyons* v. *Lyons* (4th Cir. 1916) 233 F. 744 (bequest of " 'the residue of my money in bank' "). In both *Offutt* and *Lyons,* the court held that the terms used in the will included the certificates of deposit in issue. More recently, in *In re Estate of Morris* (1971) 15 Ariz.App. 378 [488 P.2d 1015], an Arizona appellate court cited *Offutt* with approval and (at pp. 1019-1020) held that the word "cash," as used in a holographic codicil, included a time certificate of deposit maturing some six months after the death of the testatrix.

Also in accord is *Estate of Carrillo,* 187 Cal. 597 [203 P. 104], wherein the testatrix, by a holographic will, bequeathed "1 third of cash that is left after my demise." At the time the will was written, the testatrix was owed $7,000 from the estate of her husband and had a promissory note signed by the executors of the husband's estate. The will also specifically referred to this sum of money and conditionally bequeathed $500 of it to her attorney. The court held that to effect the intent of the testatrix, the $7,000 promissory note was properly disposed of as "cash" under the terms of the will, although it had not come into her estate at the time of her death. To go along with appellant's attempt here to distinguish the *Carrillo* case would simply frustrate the clearly expressed intent of the testatrix.

■ The trial court's construction of the will is reasonable and con-

sistent with the intent of the testatrix and in accord with our own interpretation of the document (*Estate of Stadler,* 177 Cal.App.2d 709 [2 Cal. Rptr. 515]). Accordingly, we think it should not be disturbed on appeal (*Abramovic* v. *Brunken,* 16 Cal.App.3d 719, 722 [94 Cal.Rptr. 303]).

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.