Joseph A. Cox S.
The testator died on July 8, 1946, and his will was admitted to probate in the month following his death. It bequeaths several general legacies, only one of which, a preferred legacy in the sum of $1,000, has been paid. All of the other general legacies, totalling $32,000, are given to charitable and educational institutions. No portion of any of these legacies has been paid. One of the legatees instituted this proceeding to compel payment of its legacy, and the other charities join in the demand for payment, The beneficiaries of trusts created by the *968 will and the executors raise questions in respect of these general legacies which require a construction of the will.
The first three paragraphs of the will relate to payment of debts and the appointment of executors and trustees. Paragraphs fourth to tenth contain the general legacies to the one individual and charities. Paragraph eleventh reads as follows: ‘‘11. If the sum total of the bequests which I have heretofore made exceeds in amount one-third of my estate, exclusive of the stock which I may hold at the time of my death in Ex Lax Inc., Alba Corporation, Matz Corporation and in Matz Corporation Limited (Palestine), then and in that event, each of the above legacies, except the legacy to Helen Shaver, shall be abated proportionately, so that the aggregate amount of all the legacies shall be one-third of my estate, exclusive of any stock which I may hold at the time of my death in Ex Lax Inc., Alba Corporation, Matz Corporation and in Matz Corporation Limited, (Palestine).”
The parties are in disagreement as to the meaning of the words “ my estate ”, as used in the provision just quoted. If they mean “ gross estate ” (excluding the specified securities), the $33,000 total of general legacies is far below the one-third limit. Even if they mean the value of what remains after payment of debts, administration expenses and funeral expenses, the general legacies will still be well within the one-third limit. However, if the term 11 my estate ’ ’ was intended to describe what remains after payment of estate taxes, as well as all the other necessary disbursements, there will be nothing at all left for the payment of general legacies. We must, therefore, look to other parts of the will which shed light upon the interpretation of paragraph eleventh, and particularly the portions dealing with payment of estate taxes. Moreover, an understanding of the fundamental disagreement among the parties requires some reference to the testator’s background.
Sidney Matz, the testator, never married. He was survived by his father, Israel Matz, his mother, and his two sisters, Alice Goodman and Ethel Edelman. Mrs. Goodman has only one child; Mrs. Edelman has a son and a daughter. Israel Matz had been the principal stockholder of a successful business enterprise now incorporated under the name Ex-Lax, Inc. Among the other corporations in which Israel Matz was interested were Matz Foundation, a charitable corporation, and two holding corporations, Alba Corporation and Matz Corporation. Other litigation in this estate reveals that Alba Corporation had been a substantial stockholder of Ex-Lax, Inc. The two sisters of the testator andjtheir husbands are also substantial stockholders of *969 Ex-Lax, Inc. The mother of the testator died in 1948 and his father died in 1950. The will of the testator gives special attention to the shares of Ex-Lax, Inc. and the holding corporations. Much of the acrimonious disagreement among the survivors of the family is patently attributable, in part at least, to their policies respecting these corporate shares.
The will of this testator indicates an intent and purpose to dispose of his holdings in the family corporations so that each ] iranch of the family will receive equal treatment. We have noted that in relation to possible abatement of general legacies, the testator excluded all holdings in the family corporations from the body of assets on which the allowable percentage was to be based. He thus clearly stated his intention to preserve these shares free from any claim of any other legatee. He then disposed of the family shares to the two remaining branches of the family. The shares in Matz Corporation Ltd. (Palestine) were divided equally between his two sisters. All of the shares in Ex-Lax, Inc., and all of his shares in the two holding corporations were set up in trust for his two nephews and his niece, but in such a way as to preserve equality between the two branches. The share of the Goodman child in the trust was, therefore, one half and that of the two Edelman children, one quarter each. The trusts for the two nephews are to terminate at age 25 and that for the niece when she reaches the age of 21.
The testator gave specific legacies of some tangible personal property which are of no consequence in this proceeding. All of the remainder of his estate is to be held in trust for his two nephews and nieces, but here the shares are an equal one third for each. This fund would not under any circumstances include any of the family corporation shares. The corpus is distributable to each nephew at age 22 and to the niece at age 21. A provision applicable to both trusts would give the share of any beneficiary dying before the specified age to the mother of the beneficiary. The testator thus made his sisters the alternative trust beneficiaries, and he preserved equality of treatment as between them with respect to all of the family corporation shares.
Paragraph nineteen is the real center of the controversy. It reads: “19. It is my desire that all of the above mentioned legacies shall be paid in full, and that no deduction shall be made for the payment of State or Federal Inheritance or Estate taxes, or for any other taxes. Such State, Federal Inheritance or Estate taxes, and any other taxes shall be paid out of my residuary estate. It is my desire, however, that if there shall not be sufficient cash money in my residuary estate to pay such State, Federal Inheritance or Estate taxes, or any other taxes, that my *970 executors sell enough of the stock of Ex Lax Inc. to obtain the necessary cash money with which to pay the above mentioned taxes, and that only such stock in Ex Lax Inc. as will remain after such sale become part of the trust which I have created in paragraph 16 of this, my Last Will and Testament. I hereby direct that such stock in Ex Lax Inc. be sold to my sisters Alice M. Goodman and Ethel M. Edelman, in equal proportions, at forty dollars per share, if they shall desire to purchase same. If either of them shall decline to purchase the stock, such stock may be sold to the other. If neither of them shall-desire to purchase the stock, at the price hereinabove mentioned, my executors shall have the liberty to sell said stock to any person or persons. ”
It will be noted that it would be to the interest of the Edelman beneficiaries to have as much of the estate taxes as possible payable out of the family corporation shares because in that case they would contribute together only one half of the taxes. To the extent that estate taxes fall upon the Ex-Lax stock, the residuary estate is increased, and in the latter fund their combined interests total two-thirds. Moreover, their mother would have the opportunity to purchase one half of all stock that would, in that event, have to be sold, and at a price less than its value, with the result that no real loss would result to this branch of the family. The Edelman beneficiaries argue that the words ‘ ‘ cash money in my residuary estate ” mean cash on deposit at the moment of the testator’s death. Since the cash on hand and on deposit amounted to only $9,627.50 and the estate taxes will exceed $170,000, it is apparent that, under this interpretation, almost the whole burden of estate taxes would fall on the trust of the family corporation shares. In that event, there would be no abatement of the general legacies at all. The Edelman beneficiaries contend, however, that if estate taxes are payable from the residuary trust and not from the family corporate shares, the legacies will abate completely. They are joined in this construction of the will by their father, who is one of the executors.
The other executor under +he will of the testator is the father of the Goodman beneficiary. His reading of the will would place the impact of the estate taxes against the residuary estate in which his son has only one-third interest. However, he argues that the general legacies to the charities do not lapse because he interprets the words “ one-third of my estate ” as they appear in paragraph eleventh, as meaning the gross estate (exclusive of the securities specified by the testator), with the result that the charitable legacies would not exceed the stated maximum.
*971 The charities demand payment of their legacies, with interest. They construe paragraph eleventh as referring to the assets of the testator before payment of estate taxes.
If we consider only paragraph eleventh of the will, there could be little doubt that the proportion fixed as the maximum for the general legacies would be based upon the value of the assets (exclusive of the family corporations) before considering the impact of estate taxes. Charitable legacies are exempt from any burden of estate taxes and hence in an equitable allocation of estate taxes, the charitable beneficiaries would receive their gifts without deduction for taxes (Decedent Estate Law, § 124, subd. 3, cl. [ii]). Therefore, if estate taxes were required to be equitably apportioned, all of the legacies under the will would be tentatively fixed in amount before any legatee’s equitable share of the tax were allocated. (See Matter of Wolf, 307 N. Y. 280, 287.) If, on the other hand, estate taxes were not to be apportioned, it is only because the will itself shifts the equitable burden of some beneficiaries and imposes that burden on the shares of others. However, we should hardly expect to find that the shifting of the tax burden from one group to another would seriously affect the legacy of one who is exempt from any part of the tax impact.
Paragraph nineteenth of the will governs the allocation of the estate taxes. In its first sentence, the testator expressed the desire that “ all of the above mentioned legacies shall be paid in full ’ ’, and that no taxes shall be allocated against any of them. Patently the term ‘ ‘ the above mentioned legacies ’ ’, was intended to refer to all legacies under the will with the exception of the residuary gifts. The residuary legacies must have been excepted because the will states that all such taxes ‘ ‘ shall be paid out of my residuary estate.” Thus, the burden that would otherwise fall upon the one general legacy and upon all of the specific legacies, including the stock of the family corporations, is shifted to the residuary estate. There is one further provision, however, and that is, that if ‘ ‘ there shall not be sufficient cash money in [his] residuary estate to pay such * * * taxes ”, then and in that case “ enough of the stock of Ex Lax Inc.” shall be sold to obtain “ the necessary cash money ” to pay the taxes. (Emphasis added.) It should be noted that the testator does not speak of money that is in his possession at the moment of his death. His thought is expressed rather in terms of the future, and refers to money in his “ residuary estate ”; in other words, money in the hands of his executors during the course of their administration of the estate. The residuary estate of a decedent does not come into being until all prior obligations, expenses and legacies have been satisfied either by actual payment or, at least, by an earmarking of funds for that particular purpose.
*972 In Matter of Ladd (9 Misc 2d 885), this court pointed out the distinction between cases where the term ‘1 money ’ ’ is used with reference to the date of death of the testator and cases where it is used with reference to a later date. We said (p. 888): * ‘ [It] must be noted that the will of this decedent does not speak of ‘ money ’ in terms of cash on hand at the time of death (cf. Matter of Feist, 170 Misc. 497, supra; Matter of McKendrie, 150 Misc. 665, supra; Matter of Hinds, 270 App. Div. 408, affd. 296 N. Y. 648), but rather as funds in the hands of his executor. The decedent did not bequeath the money on deposit at his death but rather the ‘ money left over after payment of [his] debts and funeral expenses ’, and since the disbursements specified could be made only by .his estate fiduciary, the reference was plainly to money received by his executor either from the testator’s cash on hand or from the money due to him at his death. ’ ’
In that case, the issue involved a bequest of ‘ ‘ moneys ’ ’. In the pending case, the term is not used in relation to a bequest but rather with reference to the payment of estate taxes. In both cases, however, the term was plainly used to describe money which remained in the hands of the executors after satisfying other necessary charges. The execution of a will by the fiduciary requires him to gather and collect all assets, to ascertain all valid and proper debts and expenses, to convert the assets into cash sufficient for distribution purposes, and to pay all debts, expenses and taxes and to make such distribution as the will commands. In the course of his administration of the estate, he must proceed diligently to collect claims of his testator and must liquidate certain of the assets owned by the testator. The executors under the will of this testator proceeded promptly to collect proceeds of insurance policies aggregating more than $85,000. The decedent must have been aware of the probable realization of such sums. Moreover, the decedent owned bonds issued by the City of New York, United States savings bonds and certain claims. All of these bonds were of a character generally regarded as liquid, and the claims have actually been reduced to cash. Thus, there can be no doubt that this decedent knew that a substantial amount of cash would come into the hands of his executors, and that a great part of his assets could readily be liquidated. He must have realized, too, that there is always the possibility that some of his assets owned by him at death might not be capable of ready liquidation. To pay estate taxes, his executors must ‘‘ obtain the necessary cash money.” If there is not sufficient “ cash money in [his] residuary estate ” at that point in the estate administration and the liquid assets were exhausted, the executors would be obliged to turn to the portion *973 set aside for the legatees, for in that case the statutory rule of equitable apportionment of the balance of the estate taxes would come into play and would distribute the rest of the tax burden in accordance with the statutory rule. (See Matter of Zimtbaum, 206 Misc. 432, 433; Matter of King, 6 Misc 2d 922, 923 and eases cited.) All of the specific legatees would be required to contribute. The testator, however, was anxious that the burden would not fall upon the general or specific legatees except the beneficiaries of the Ex-Lax stock. He explicitly directed that the balance of the tax be satisfied from the proceeds of sale of that stock, and he carefully directed that the stock be sold in such a way as to maintain insofar as possible the equal treatment of both branches of the family.
It is argued that the provision in respect of abatement of general legacies has no reasonable place in the testamentary plan unless it also means that the residuary legacies are intended to equal approximately the remaining two thirds of the assets. We engage only in speculation if we attempt to decide the estate tax figure that the testator had in mind or the value he placed on his residuary estate, after taxes. Perhaps he made no attempt at all to estimate these amounts. Perhaps he intended merely to make sure that the entire tax did not fall upon the family corporations. His motives or his expectations may reasonably be the subject of differing views. His explicit directions, however, are clear and reasonably fit in place in the basic plan which emerges from his will. He directed that the total of the general legacies should not exceed one third of his estate, and he also directed that all such legacies be free of any deduction for estate taxes. He explicitly made the residuary estate the source of all estate tax payments to the extent that there were liquid assets available for such a charge, and he thus freed one general legacy and all the specific legacies from liability for their otherwise equitable share of the taxes. In shifting the tax burden from the specific legacies to the residue, the testator did not intend thereby to destroy the charitable legacies, some of which, at least, would be exempt from the tax charge. On the contrary, shifting the tax liability was intended to benefit such general legacies. Patently, the testator intended the one-third limitation on general legacies to apply before deduction of any estate taxes from his estate.
The court, therefore, holds that the provision for abatement of legacies is not operative because the assets, after payment of debts and expenses, exceed the specified percentage. All estate taxes are payable from the residuary estate to the extent that there is sufficient cash in that fund to permit payment of such *974 taxes. The testator did not intend to make the amounts of cash in the residue conditional upon the action or inaction of the executors in liquidating assets. The term ‘ ‘ sufficient cash money in my residuary estate ” was intended to embrace all funds coming into the hands of the executors in the performance of their duty to liquidate sufficient assets to perform the duties imposed upon them. (Surrogate’s Ct. Act, § 214.)
The general legatees are accordingly entitled to payment of their legacies in full. They are clearly entitled to interest upon their legacies at the rate of 3% from the time when the legacies became payable, namely, seven months from the issuance of letters testamentary. (Surrogate’s Ct. Act, § 218.) However, the legatees contend that the delay in payment was unreasonable, and that interest at the legal rate should be allowed from the date on which payment should reasonably have been made. That issue was not presented at the time this matter was set down for hearing. All parties should have an opportunity to meet that issue. The question of interest on the legacies in excess of 3%, and the related question of liability for unreasonable delay, if any, will, therefore, be reserved for determination in the pending accounting proceeding.
An intermediate decree directing payment of the legacies and construing the will may be submitted, on notice.